HATCH v. FERGUSON et al.

(Circuit Court, D. Washington, N. D.   October 6, 1893.)

1. INDIANS—CITIZENSHIP—RIGHT TO SUE IN FEDERAL COURTS.

An Indian woman who marries a citizen of the United States, voluntarily takes up a residence apart from her tribe, and adopts the habits of civilized life, becomes a citizen of the United States and of the state in which she resides, and may maintain a suit in the federal courts against citizens of other states.

2. EQUITY—DEEDS—CANCELLATION.

A deed made by an attorney in fact of an Indian woman, who, though illiterate and unable to converse in English, is yet possessed of a good understanding, and is capable of acting independently, will not be set aside on the ground that she was imposed upon, and induced to give the power without knowledge of its effect, even if voidable for this reason, when it appears that the sale was to the promoters of a town-site company for a price largely in excess of the value of the land at the time; that she made no attempt to repudiate the sale, but accepted and used for her own benefit the purchase money, voluntarily delivered possession of the land, and, although the purchasers were making large expenditures on the property, and it was rising rapidly in value, made no claim until it had increased many fold, and until a lawyer sent by one of her friends had consulted her.

3. SAME.

The mere fact that she still retains the legal title to the land by reason of the issuance to her of a patent from the United States, after the conveyance made by her attorney in fact, will, under the circumstances, give her no right to equitable relief.

In Equity.   Suit by Josephine Hatch, an Indian woman, against E. C. Ferguson, Henry Hewitt, Jr., and the Everett Land Company, to determine adverse claims to land upon which the city of Everett is in part located, and to annul a deed conveying her title to said land, executed by said Ferguson as her attorney in fact. Dismissed.

A. D. Warner, Stratton, Lewis & Gilman, Junius Rochester, and W. Scott Beebe, for complainant.

Francis C. Barlow and Brown & Brownell, for defendants.

HANFORD, District Judge.   The complainant is an Indian woman, born within the United States, and is the widow of Ezra Hatch, who was a citizen of the United States.   Although she is

an illiterate person, and unable to converse in the English language, the evidence shows that upon her marriage she voluntarily took a residence apart from the tribe to which she belonged, and adopted the habits of civilized life, by reason of which fact and her marriage to a citizen she is entitled to the same rights as other female citizens. Supp. Rev. St. (2d Ed.) p. 536, § 6. Being a citizen of the United States and a resident of the state of Oregon at the time of the commencement of this suit, she is also a citizen of the state of Oregon, and entitled to prosecute this suit in this court against the defendants, who are citizens of the state of Washington.

The object of the suit is to obtain a decree canceling certain deeds affecting the title to a tract of 160 acres of land, situated within the limits of the city of Everett, in this state, enjoining the defendants from claiming any interest in said land, and declaring the complainant to be the true owner thereof. The history of the title which is the subject of controversy, in so far as material to the determination of this case, is as follows: The said Ezra Hatch, under the homestead law of the United States, with his family, consisting of the complainant and their children, settled upon and claimed said land in the year 1886, and did continuously reside upon and claim the same as a homestead until the time of his death, which occurred in July, 1890. During his last illness, being in need of money, and being assured by a neighbor that, if he would commute said homestead, and perfect his title thereto, by a cash entry, he could then sell said land to a person who was ready to buy it, for the price of $1,500 besides the amount necessary to pay the government price and all expenses of proving up, said Ezra Hatch initiated proceedings to perfect his title in that manner by causing the requisite notice of his intention to prove up to be published, but his death occurred before the time fixed in said notice for making the final proof and payment. By his last will and testament, said Ezra Hatch constituted the defendant E. C. Ferguson his executor, with authority to manage his estate and settle up his affairs, free from the control of the probate court, and without giving bonds, and also appointed said Ferguson to act as guardian of his minor children until they should each become of age or choose another guardian. That part of said will which makes disposition of the estate reads as follows:

"I give and bequeath to my daughter, Esther Hatch, and to my sons, Dexter Hatch, Arthur Hatch, Cyrus Hatch, and Ezra Hatch, all my estate, real and personal, of every name and nature whatsoever, owned by me at the time of my death, after paying all of my just debts and the admitting of this, my last will, to probate, and the sum of five dollars hereinafter bequeathed to my wife, Josephine Hatch; said estate being the one-half interest in the community property now owned by me and my said wife, from which I bequeath to my said wife the sum of five dollars, and it is my wish and desire that my said daughter and sons share and share alike in my said estate."

Said will was duly admitted to probate in the probate court for Snohomish county, and letters testamentary were issued to said Ferguson, July 22, 1890. Within a few weeks after the death of

her husband, the complainant, without consulting Ferguson, or being influenced by either of the defendants to take such step, caused a notice to be published of her intention to make final proof and entry of said land, in her right as widow of the deceased homestead claimant. She had at that time no money for the purpose, and had made no definite arrangement to borrow the necessary amount, but seems to have relied upon a neighbor to supply or obtain it for her. After giving such notice she went to see Ferguson, and had an interview with him, at his solicitation, in which he advised her to not borrow the money, giving as a reason that those upon whom she was depending were liable to disappoint her, or, if she mortgaged her land, she would be unable to pay interest, or raise money to discharge the debt, without sacrificing the property, and he also assured her that he would advance money to her for the purpose. After said interview Mrs. Hatch seems to have relied upon Ferguson to supply the money necessary to perfect the entry, and on September 19, 1890, she went before the county clerk of Snohomish county with her witnesses, and made the final proof. Ferguson was not present at the time this was done, but met her in Snohomish city on the evening of the same day, and made provision for her and her children to remain at a hotel that night; and on the following morning he obtained from her a power of attorney, which will be hereafter referred to. Two days after obtaining the power of attorney, Ferguson advanced $240 to pay for the land and fees; and on September 26, 1890, the proofs were filed and payment made in the United States land office at Seattle. On November 16, 1891, a patent for said land was issued to the complainant. Besides the said homestead claim, the estate of Ezra Hatch consisted of 160 acres of land in an adjoining section, to which he had acquired title by the location thereon of a land warrant issued to him for services in the United States navy during the Mexican War, (which land is also the subject of a kindred suit now pending in this court,) and personal property of trifling value. The two tracts of land are similar to each other as to situation, quality, and value, and until the scheme of building the city of Everett had taken definite form said lands were not worth to exceed $10 per acre. The most valuable timber had been sold and removed, and the family were unable to obtain any income from said land otherwise than by selling it. In the summer and fall of 1890 the defendant Henry Hewitt, Jr., was engaged in buying land in the vicinity of the Hatch lands, as agent for a syndicate having in view the founding and building of a city, in furtherance of which purpose the Everett Land Company, one of the parties defendant herein, was incorporated, a city was laid out upon the lands purchased by Hewitt and his subagents, and large sums of money have been laid out in the improvement of streets, the erection of buildings and industrial works, and in the construction of railroads. In consequence of said expenditures and operations, land in and about the said town site rose in value very rapidly during the last few months of 1890 and the year 1891. On the 21st of October, 1890, the defendant Ferguson, under the power of attorney given him

by the complainant, executed a deed to the defendant Henry Hewitt, Jr., of all her right, title, and interest in and to both tracts of land,—that is to say, the said homestead claim, and the 160-acre tract acquired by the location of said land warrant, which tract, for convenience of reference, has been designated in the evidence as the "Old Place,"—and received in payment from Hewitt $2,000 in cash, and took a mortgage back to secure a future payment of an additional sum of $2,000; said defendants having agreed together that said Hewitt should purchase the said interest, which they at the time supposed to be an undivided one-half of both tracts, for a price computed at the rate of $25 per acre for the entire property. The balance of said purchase price was afterwards paid to Ferguson, and said mortgage was canceled by him, as attorney in fact for the complainant. Since this suit was commenced, the defendants have been advised that the complainant acquired the said homestead in her own right, and that by said deed the whole title passed to said Hewitt, and he has paid to Ferguson an additional $2,000 to make up the full purchase price at the rate of $25 per acre. After obtaining said deed, the defendant Hewitt and his wife executed a deed for the homestead to one P. D. Norton, who afterwards conveyed it to the Everett Land Company, for the price of $128,000.

October 27, 1890, Hester Hatch, an adult daughter of the complainant, and said Ezra Hatch, (called "Esther Hatch" in her father's will,) executed a deed to the defendant Henry Hewitt, Jr., conveying all her undivided interest in both of said tracts for the price of $800. The defendant Ferguson negotiated said sale, and received the purchase money, as her agent. A suit to cancel said deed has been commenced by said Hester Hatch, and the same is now pending in this court. In April, 1891, the defendant Henry Hewitt, Jr., commenced proceedings in the superior court of Snohomish county against the minor children of the complainant and Ezra Hatch to partition the tract called the "Old Place." The defendant Ferguson appeared in said partition suit for said minors as their guardian, and, without a contest, permitted a decree to be rendered declaring Hewitt to be owner of an undivided three-fifths of said tract, and ordering a sale thereof in lieu of partition. At the sale pursuant to said order, Hewitt was the purchaser, for the price of $100 per acre, and Ferguson, as such guardian, received the portion of the money awarded to said minors. Six hundred dollars of the money paid for the complainant's interest in said lands was paid for eight lots in the village of Marysville. A house was erected thereon for use of the complainant and her family as a dwelling, which was also paid for by Ferguson out of the same fund, and in the winter of 1890 possession of both of said tracts was surrendered to Hewitt, and the family then went to Marysville, and occupied said new house. After this move, a tract of 40 acres near Marysville was deeded to the complainant for the price of $2,500, which sum was paid by Ferguson out of the money received from Hewitt for the interests of the complainant and Hester Hatch in the lands in controversy. The

foregoing are undisputed facts. Other statements embodied in this opinion are to be taken as my conclusions from consideration of the evidence.

The grounds upon which relief is asked for in this case are that Ferguson and Hewitt conspired and confederated together to acquire the Hatch lands for less than the value thereof, in order to further the scheme of the projectors of Everett, and to make a profit for themselves, and the price received by Ferguson is grossly inadequate; that the complainant, being an ignorant Indian woman, unacquainted with the methods of conveying title to real property, was overreached and deceived by Ferguson, who induced her to sign the power of attorney to him by falsely representing it to be a mere declaration of friendship; that she did not knowingly give Ferguson any authority, written or verbal, to sell her land; that said deed is void, because the power of attorney does not authorize Ferguson to sell or convey any property which the complainant did not own at the date of its execution, which was several days prior to the filing of her final proofs and payment of the government price for the land in the United States land office, and for the further reason that if effect be given to the power of attorney, so as to authorize the attorney in fact to sell the homestead, then it becomes virtually a contract made prior to final proof, whereby a title to land to be acquired under the land laws of the United States should inure to the benefit of parties other than the individual making the entry, and it is to that extent void, because contrary to public policy. The case has been contested very earnestly. The zeal of counsel to bring to bear every fact and circumstance having any bearing, direct or remote, upon the issues, is evidenced by the voluminous mass of testimony which I have been called upon to consider. Much of it relates only to the credibility of witnesses and incidental and collateral matters. I have given due consideration and weight to all the evidence presented, but I do not feel called upon to perform the amount of labor necessary to give in this opinion a close analysis or review of all of it.

In general, the evidence is probably sufficient to support findings of facts consistent with the theory of the complainant's contention, and sufficient to warrant a decree in her favor, if not counterbalanced by other facts equally well supported. The conduct of the complainant herself and members of her family who appear as her chief witnesses, as shown by a decided preponderance of the evidence, is so radically inconsistent, that I cannot say that the wrongful conduct of the defendants, charged in her bill, and her innocence, have been so clearly and convincingly proven by the whole evidence as to entitle her, upon equitable principles, to regain this property. There is no direct evidence of a conspiracy nor of any corrupt or unusual practice on the part of Hewitt or the Everett Land Company in purchasing complainant's interest in this land. There is no evidence tending to prove that at the time of the sale a better price could have been obtained from another purchaser. All the sales shown by the evidence to have been made near the time of this transaction were made to Hewitt, or his

agents, or persons who then were, or soon afterwards became, associated with him in founding a city. The prices which they paid for other land with river and harbor frontage affords no criterion for fixing the value of this land. The amount paid for the complainant's interest is more than double what it was worth at that time for any other than speculative purposes, and I cannot find that a higher price could have been obtained except upon the theory that Ferguson or some other person acting for Mrs. Hatch might have extorted a larger sum from Hewitt. He cannot be justly charged with the commission of a fraud simply by reason of the fact that the bargain which he made appears, in the light of subsequent events, to have been a good one for him.

There is a hopeless conflict of evidence relating to the acts, sayings, and doings of Mrs. Hatch, her daughter, who acted as interpreter for her, Ferguson, Heffner, the notary public who certified to the acknowledgment of the power of attorney, and Harris, a subscribing witness, in connection with the execution of that instrument; and, in my opinion, there is no preponderance in favor of either side. The notary public does not in the acknowledgment certify that he made known to Mrs. Hatch the contents or nature of the instrument. The decision of the supreme court of this state in the case of Jackson v. Tatebo, 28 Pac. Rep. 916, is to the effect that if a person who is unable to converse in the English language alleges that, at the time of executing a deed, he was misinformed, and did not intend to convey his property, and the certificate of acknowledgment does not state that the officer made known to him its nature or contents, the burden is upon the party claiming under such deed to prove that such person did understand the import of the instrument at the time of signing it. I assume that this decision establishes a rule of property in this state, and I should therefore hold the power of attorney to Ferguson to be void if I deemed it necessary to make findings upon this part of the case. I will dispose of this point in connection with the questions as to the proper construction to be given to the power of attorney, and the validity of the deed made under it. The power of attorney is general, and gives ample authority to sell and convey any lands in the state of Washington which Mrs. Hatch might have acquired while it remained in force. The argument that it should be so limited by construction as to except the homestead would merit serious consideration if the fact that, at the time of giving the power of attorney, she intended that Ferguson should have the right to sell said land, were to control my decision; for such a contract if made prior to the presentation of her proofs to the register and receiver of the land office, falsified the sworn declaration which she was required to make in proving up, to the effect that she had not made any contract or agreement whereby the title which she should acquire should inure to the benefit of any other person. A contract having that effect, being contrary to public policy, cannot be upheld judicially. Anderson v. Carkins, 135 U. S. 483, 10 Sup. Ct. Rep. 905. And were this suit for the mere purpose of canceling the deed given by Ferguson, as her attorney in

fact, to Hewitt, and were the parties at the time of its commencement situated the same as they were immediately after the making of said deed, there would be no difficulty in granting relief to the complainant.

It is necessary, however, to take into account the changed situation of the parties, for which the complainant is responsible, by reason of her own acts subsequent to her entry of the land, whereby her right to a patent became perfected. The patent subsequently issued to her is a confirmation of her right to the land at the time of making her final proof and payment at the land office. After obtaining the receiver's receipt for the payment, she could lawfully dispose of the land. U. S. v. Budd, 144 U. S. 154, 12 Sup. Ct. Rep. 575. It is distinctly and fully proven by the evidence that, within a few days after Ferguson had given the deed to Hewitt, Mrs. Hatch was informed of the sale of her interest, and the price for which it had been sold, and the manner of payment, and at that time she did not disavow the transaction, nor make any protest. The only expression of dissatisfaction made at that time, according to the evidence given in her behalf, was the simple remark made by her daughter to Ferguson that he "did not get much." After being so informed, Mrs. Hatch, for her own reasons, chose Marysville as her place of residence, and, without being influenced or persuaded by any one, went there, and selected and bargained for eight lots, and authorized Ferguson to pay $600 for them. She approved a plan for a house, and authorized a neighbor to contract for building it, and with her consent it was built, and Ferguson paid for it. She selected and authorized Ferguson to pay for furniture for her new house, and, when it was ready for occupancy, she voluntarily surrendered to an agent of Hewitt possession of the land which Ferguson had sold to him. At different times she drew money from Ferguson, and used it as suited her, and she finally invested the residue of the $4,000 in the purchase of 40 acres of land. She kept silent while the Everett Land Company was making large expenditures in improving this land, and she appears to have been unconscious of having suffered an injury until a lawyer sent her by one of her friends had consulted with her.

The fact of her being thus unconscious was not because of lack of knowledge of what had transpired, nor incapacity to understand. She is able to think for herself and act independently. The friend who, after enhancement in the value of the land, sent a lawyer to consult with her, was near by, and could have counseled with her before she used the money which Hewitt paid. She cannot be classed with those who are under legal disability by reason of mental weakness, and whose contracts may for that reason be avoided, and none of her acts above mentioned were under duress, or brought about by intimidation or undue influence. By knowingly receiving and appropriating to her own use the money paid as the price for her land, and voluntarily giving possession of it to a purchaser, she has actually made a bargain, and transferred the land and all her rights therein. If the bargainee has

failed to obtain from her a valid conveyance of the legal title, she is not by reason of that fact entitled to aid from a court of equity in an effort to regain property which has been actually and fairly transferred.

Let a decree be entered dismissing this suit, with costs to the defendants.