[No. 4255.   Decided July 28, 1902.]

GREGORIE FRAZEE *et ux., Respondents,* v. SPOKANE COUNTY *et al., Appellants.*

INDIANS — HOMESTEAD- RIGHTS IN PUBLIC LANDS — MISTAKES IN PATENTS.

A patent to a member of the Spokane tribe of Indians issued under and by virtue of the provisions of the act of congress of January 18, 1881, which relates only to the Winnebago Indians of Wisconsin, is void in so far as it attempts to impose a limitation that the lands patented shall be exempt from taxation and shall remain inalienable for the period of twenty years.

SAME.

An Indian who was entitled to a patent for a homestead under the act of congress of July 4, 1884, but to whom the officers of the government erroneously issued a patent under another law, could not be deprived of the limitations and conditions of the act of 1884 in his favor through such action of the officers of the land department.

SAME — EFFECT OF CITIZENSHIP.

The act of congress of February 8, 1887, which confers citizenship upon all Indians who have voluntarily taken up residence separate and apart from any tribe and adopted the habits of civilized life is not in conflict with the act of congress of July 4, 1884, which extends the benefits of the homestead laws to Indians located upon the public lands, with restrictions, however, against alienation for a period of twenty-five years after the acquisition of title.

SAME — CONDITION AGAINST ALIENATION.

The act of congress of July 4, 1884, giving Indians the right to file homestead entries upon public lands, which shall be held in trust for them by the government for twenty-five years after

issuance of patent, and then full and unincumbered title vested in them by another patent after the expiration of such limitation, applies to those who have severed their tribal relations as well as to those who have not.

SAME — WHICH STATUTE GOVERNS.

Although an Indian located a homestead on public land while the act of March 3, 1875, was in force, which placed a five-year limitation upon alienation of lands acquired thereunder, yet where such five-year period of limitation was enlarged to twenty-five years by the act of July 4, 1884, and made applicable to "such Indians as may be now located upon public lands," an Indian who had located prior to the passage of the 1884 act but had not earned title until some years subsequent thereto, would be entitled to a patent with the twenty-five year limitation on alienation.

SAME — TAXATION.

Where the government holds title in trust for a period of years to lands patented to Indians, no taxes can be levied against the land during such period.

Appeal from Superior Court, Spokane County.—Hon. GEORGE W. BELT, Judge. Affirmed.

*Horace Kimball* and *Miles Poindexter,* for appellants.

*Graves & Graves,* for respondents.

The opinion of the court was delivered by

HADLEY, J.—This action was brought by respondents against appellants to remove a cloud of taxes heretofore levied against respondents' real estate, to cancel certificates of delinquency already issued thereon, and to enjoin the levy and collection of taxes against said land for the year 1901. The complaint alleges that respondents are husband and wife; that they are Indians, formerly members of the Spokane tribe, but previous to the entry and patent hereinafter mentioned they severed their tribal relations, and have never since resumed them; that on or about March. 6, 1883, they settled upon and made entry of certain de-

scribed lands situate in Spokane county under the provisions of the homestead act of congress of 1862; that thereafter, on May 31, 1890, they made proof of their compliance with the provisions of the homestead laws, and made payment for such lands as is required by said laws, and on said date received the final certificate of the receiver of the land office that they had fully complied with the provisions of the law; that thereafter, on December 11, 1891, a patent was issued to them, and at all times since said date they have been, and now are, living upon said land, and cultivating it as their home; that they earned their lands and made final proof of their right thereto under and by virtue of the provisions of the act of congress of July 4, 1884, entitled, "An act making appropriations for the current and contingent expenses of the Indian Department, and for fulfilling treaty stipulations with various Indian tribes, for the year ending June 30, 1885, and for other purposes;" and particularly under paragraph 5 thereof, which paragraph is as follows:

"That such Indians as may be now located on public lands, or as may, under the direction of the Secretary of the Interior, or otherwise, hereafter, so locate, may avail themselves of the provisions of the homestead laws as fully and to the same extent as may now be done by citizens of the United States; and to aid such Indians in making selections of homesteads and necessary proofs at the proper land offices, one thousand dollars, or so much thereof as may be necessary, is hereby appropriated; but no fees or commissions shall be charged on account of said entries or proofs. All patents therefor shall be of legal effect, and declare that the United States does and will hold the lands thus entered for the period of twenty-five years, in trust for the sole use and benefit of the Indian by whom such entry shall have been made, or, in case of his decease, of his widow and heirs according to the laws of the State or Territory where such land is located, and

that at the expiration of said period the United States will convey the same by patent to said Indian, or his widow and heirs as aforesaid, in fee, discharged of said trust and free of all charges or incumbrance whatsoever." 23 St. at Large, 96.

That nevertheless, in disregard of the rights of respondents under and by virtue of said laws, the executive officers of the United States purported to issue to them a patent for the lands under and by virtue of the provisions of the act of congress of January 18, 1881 (21 St. at Large, 315), relating to transactions with the Winnebago Indians of Wisconsin, and did not issue to them a patent as is provided in the act of 1884 above mentioned. Allegations are also made to the effect that the taxing officers of Spokane county have levied taxes against the lands, that certificates of delinquency therefor are held by defendant Witherspoon, and that the officers are threatening to levy taxes for the year 1901, which, if carried out on the tax rolls, will appear as an apparent lien against the lands. It is also alleged that prior to the commencement of this suit the respondents applied to the department of justice of the United States for the district of Washington for the institution of a suit to cancel said taxes, or that the United States would join with respondents in a suit to cancel them, but their request was denied. Appellants demurred generally to the foregoing complaint, and the demurrer was by the court overruled, to which appellants excepted. Thereupon an answer was filed, and thereafter respondents moved for judgment as prayed upon the pleadings, which motion was granted. After the granting of the motion, appellants made application for leave to amend their answer, which was denied. They then moved to vacate the judgment rendered on the pleadings, and for a new trial, which was also denied, and they have

appealed to this court. The only errors assigned are upon the order overruling the demurrer and upon the order granting judgment upon the pleadings. The latter assignment was not discussed in appellants' opening brief, and, although discussed in respondents' brief, is barely referred to in appellants' reply brief. Appellants' counsel evidently adopted the view that the real controversy here is involved in the order overruling the demurrer. In this view we concur, and will confine ourselves to a discussion of that subject, without occupying the necessary space to discuss the other subject. We may say in passing, however, that, as we view the matter, if the complaint states a cause of action, then we think the answer does not tender any issue thereunder.

It is averred in the complaint and is conceded by appellants that the executive officers of the United States erroneously stated in the patent to respondents that it was issued under and by virtue of the provisions of the act of congress of January 18, 1881. The error is manifest, since that act relates only to transactions with the Winnebago Indians of Wisconsin, and respondents are of a different tribe. Under the provisions of that act, the patents contain a limitation that the lands patented shall be exempt from taxation of any character and shall remain inalienable for the period of twenty years. Such a limitation in a patent issued to an Indian of the Coeur d' Alene tribe was held void in *United States v. Saunders* 96 Fed. 268, and for the reasons there assigned the limitation stated in the respondents' patent is also void.

Appellants contend that the patent shall be given full force and effect as it reads without the void clause, and that there exist no limitations against taxation or alienation; while respondents' position is that, since they are Indians, the patent should have contained the limitation

provided by the act of congress of July 4, 1884 (23 St. at
Large, 76; 1 Supp. Rev. St. U. S. [2d ed.], 450), hereto-
fore quoted, as set out in the complaint.  The above stat-
ute, it will be observed, provides for the issuance of two
patents,—one when a person entitled to it under the act
shall have consummated his right, and which shall declare
a trust under which the United States shall hold the land
for the period of twenty-five years for the sole use and
benefit of the patentee and his heirs, and another shall
be issued at the expiration of twenty-five years, convey-
ing the whole title, discharged of the trust and of all
charge or incumbrance whatsoever.   Respondents urge
that they were entitled to receive the patent containing the
above limitations, under which they could rely upon re-
ceiving a perfect title at the end of twenty-five years, unin-
cumbered and unaffected by the acts of themselves or
others, and, further, that they have not lost the privilege
conferred upon them by the act through the action of the
officers of the land department in issuing a patent other
than that which they were entitled to receive.   The power
to declare the manner of disposing of public lands, and
of fixing limitations affecting the title thereto, lies with
congress.   *United States v. Gratiot,* 14 Pet. 526; *Bagnell
v. Broderick,* 13 Pet. 436; *United States v. Fitzgerald,*
15 Pet. 407; *Emblen v. Lincoln Land Co.,* 94 Fed. 710;
*United States v. Tichenor,* 12 Fed. 415.   It follows that
no officer of the government has power to dispose of public
lands without authority of congress, and he cannot waive
the conditions and limitations provided by congress to at-
tend the conveyance of such lands.   *Deffeback v. Hawke,*
115 U. S. 392 (6 Sup. Ct. 95); *Davis v. Wiebbold,* 139 U.
S. 507 (11 Sup. Ct. 628).   In *Taylor v. Brown,* 5 Dak.
335 (40 N. W. 525), a patent had been issued to a Sioux
Indian who had abandoned his tribal relations, and who

had earned his lands under an act of congress of 1875 (18 St. at Large, 420, § 15), which made the land inalienable for a period of five years. The patent did not show that he was an Indian, and contained no limitation on alienation. The court held that the act of the executive officers in issuing the patent without words of limitation could not affect the limitation prescribed by congress, and that purchasers from the patentee were chargeable with knowledge of the limitations imposed upon his title by the act of congress. The decision was rendered by a territorial court, but it was cited with approval in *Eells v. Ross,* 12 C. C. A. 205 (64 Fed. 417). The case was also appealed to the supreme court of the United States (*Taylor v. Brown,* 147 U. S. 640, 13 Sup. Ct. 549), and, although the proposition was not discussed, yet the judgment was affirmed, and the correctness of the ruling at least impliedly recognized. If, then, respondents were originally entitled to a patent under the provisions of the act of July 4, 1884, they are now entitled to the privileges and protection afforded them by that law.

Appellants argue that, as the complaint shows respondents to have abandoned their tribal relations and adopted the habits of civilized life, they have therefore become citizens of the United States, under the provisions of the act of February 8, 1887 (1 Supp. Rev. St. U. S. [2d ed.] 534). Section 6 of the act provides as follows:

"And every Indian born within the territorial limits of the United States to whom allotments shall have been made under the provisions of this act, or under any law or treaty, and every Indian born within the territorial limits of the United States who has voluntarily taken up, within said limits, his residence separate and apart from any tribe of Indians therein, and has adopted the habits of civilized life, is hereby declared to be a citizen of the United

States, and is entitled to all the rights, privileges, and immunities of such citizens, whether said Indian has been or not, by birth or otherwise, a member of any tribe of Indians within the territorial limits of the United States without in any manner impairing or otherwise affecting the right of any such Indian to tribal or other property." 24 St. at Large, 388.

It is therefore insisted that, since respondents have become citizens by virtue of the above statute, being entitled to all the rights, privileges, and immunities of citizens, it follows that they are also subject to the duties and burdens of citizenship in the way of taxation and otherwise; that, since they allege that they entered the lands as a homestead, they must be held to have acquired them with the same unrestricted title as that of any other citizen who has acquired lands under the homestead laws. They, however, not only aver that they entered the lands as a homestead, but also that they earned them and made final proof of their right to them under the aforesaid law of July 4, 1884, which extends the benefits of the homestead laws to Indians located upon the public lands. The fact that the act of 1887 confers citizenship upon Indians who comply with certain conditions does not conflict with the law of 1884. The act of 1887 relates to securing title by Indians to reservation lands which may be allotted to them in severalty, and incidentally confers citizenship upon all Indians who comply with certain conditions named. But the act of 1884 relates to the acquisition by Indians of title to lands other than reservation lands, and which are open to others as well. The later act does not repeal the former, unless it may be said that the provision conferring citizenship in the later one has the effect to repeal the clause in the former which places restrictions upon alienation. We do not think it has that effect. The evident design of con-

gress was to prepare the Indian to become a self-supporting individual, and if, as a means to that end, and for the purpose of inducing him to separate himself from his tribal relations, it saw proper to confer citizenship upon him, we are unable to see that it is repugnant to the government's still retaining a certain guardianship over him, in the way of holding title to his lands in trust for a period, so that he may not be deprived of them while he is learning the lessons and duties of citizenship.

Appellants adopt the argument that, while respondents belong to the Indian race of men, yet, having assumed the duties of civilized life, they are no longer to be classed as Indians, within the meaning of the law; that the term "Indians," in view of the statute of 1887 which confers citizenship, must be construed to refer to those persons only who are still entangled with tribal relations. We are not impressed with the view that the term, when used in statutes without qualification, should be construed as being restricted to a meaning less comprehensive than the ordinary significance thereof. The term "Indians," as ordinarily used when referring to persons in the United States, is understood to refer to the members of that race of men who inhabited North America when it was found by Caucasian people. We do not see that it logically follows that a member of that race who has become a citizen may no longer be properly called an Indian, with more force than it would also follow that a member of the African or negro race, commonly called in this country the "colored" race, and who is also a citizen, may not be properly and technically described by his racial designation. In the absence of plain and unequivocal words showing unmistakably that only those still sustaining tribal relations are referred to, we think, when the term "Indians" is used in a statute,

and without any other limitation, it should be held to include members of the aboriginal race, whether now sustaining tribal relations or otherwise.

We have, therefore, the statute of 1884, providing that such Indians as were then located, or might thereafter locate, upon the public lands, may avail themselves of the provisions of the homestead laws, but their title to lands so taken shall be held in trust for twenty-five years by the government. The very statute which conferred the homestead privilege in it described also provided for a limitation upon titles thereunder not applicable to the titles of other persons founded upon the homestead laws. Following the statute of 1884, we have that of 1887, which deals with allotments of reservation lands only, and, as heretofore said, incidentally confers citizenship upon all who have severed their tribal relations and adopted the habits of civilized life. But the latter statute in no way, either expressly or by implication, undertakes to interfere with the limitations upon titles founded under the former.

The complaint alleges that the respondents entered the land in 1883, which was prior to the passage of the law of 1884. The act of March 3, 1875 (18 St. at Large, 420), extended the privileges of the homestead laws to Indians who had abandoned their tribal relations, and placed a five-year limitation upon alienation thereunder. It is insisted that respondents' title is subject to the provisions of that law, and that the limitation upon alienation has, in any event, expired since the patent was issued in 1891. The statute of 1884 was a continuation of the homestead privilege, with an enlargement of the time of restriction upon alienation from five to twenty-five years. Respondents had no title when the law of 1884 was passed. They were simply occupants of the land. We see no reason why

they might not avail themselves of the provisions of the law of 1884, if they chose to do so; and the complaint alleges that that is what they did, which the demurrer must be held to admit. It is alleged that their proof was made in 1890, and their residence upon the land after the act of 1884 therefore covered the necessary time for their title to ripen under the homestead law. Moreover, the statute of 1884 by its terms related to "such Indians as may be *now* located upon public lands," as well as to those who might thereafter so locate. In *United States v. Saunders, supra,* the act of 1884 was held not to affect a title acquired under the law of 1875; but it will be observed that the title was fully earned and perfected before the law of 1884 was in force. The Indian was not a mere occupant of the land, but had fully earned his title and made his proof.

In *Eells v. Ross,* 64 Fed. 417 (12 C. C. A. 205), the circuit court of appeals, 9th circuit, had under consideration a contract made by a Puyallup Indian, permitting the use of a portion of his land for the purpose of constructing a railroad. Judge McKENNA delivered the opinion of the court, and, while the land in question was within a reservation, yet we think the reasoning of the learned judge is equally cogent here. The opinion says, at page 420:

"The act of 1887, which confers citizenship, clearly does not emancipate the Indians from all control or abolish the reservations. . . . That the abolition of reservations and of the guardianship of the Indians is the ultimate hope of the policy, there can be no doubt; but it will not be soonest realized by attributing fanciful qualities to the Indians, or by supposing that their natures can be changed by legislative enactment. . . . The patent has clear words of prohibition against alienation, and, even if it had omitted them, the treaties and law imposed them. . . . From its relations to the title, and from the terms of the

treaty, we think the government had the power to make
such conditions, and that they were not destroyed by mak-
ing the Indians citizens.   Such effect cannot be deduced
from the act of 1887, for, if congress could do so, congress
did explicitly clog the title with a condition of nonalien-
ation for twenty-five years, and absolutely nullified all
contracts made, touching the same, before the expiration of
such time."

To the same effect is *Beck v. Flournoy Live Stock &
Real Estate Co.,* 65 Fed. 30 (12 C. C. A. 497), decided
by the circuit court of appeals, 8th circuit.  The reasoning
of the court, as found on page 35, is particularly pertinent
to the principle involved here.  The court said:

"It is urged, as we understand, that congress could not
make these Indians citizens of the United States without
at the same time giving to them the unrestricted power to
sell, use, and control all property whatsoever in which they
chanced to have an interest.  This argument appears to us
to be untenable.  We know of no reason, nor has any been
suggested, why it was not competent for congress to declare
that these Indians should be deemed citizens of the United
States, and entitled to the rights, privileges, and immuni-
ties of citizens, while it retained, for the time being, the
title to certain lands, in trust for their benefit, and with-
held from them for a certain period the power to sell,
lease, or otherwise dispose of their interest in such lands.
It is competent for a private donor, by deed or other con-
veyance, to create an estate of that character; that is to
say, it is competent for a private person to make a convey-
ance of real property, and to withhold from the donee, for
a season, the power to sell or otherwise dispose of it.  And
we can conceive of no sufficient reason why the United
States, in the exercise of its sovereign power, should be
denied the right to impose similar limitations, especially
when it is dealing with a dependent race like the Indians,
who have always been regarded as the wards of the govern-
ment.  Citizenship does not carry with it the right on the
part of the citizen to dispose of land which he may own

in any way that he sees fit without reference to the character of the title by which it is held. The right to sell property is not derived from, and is not dependent upon, citizenship; neither does it detract in the slightest degree from the dignity or value of citizenship that a person is not possessed of an estate, or, if possessed of an estate, that he is deprived, for the time being, of the right to alienate it."

The above case was appealed to the supreme court of the United States, but was there dismissed. 163 U. S. 686 (16 Sup. Ct. 1201). See also *United States v. Flournoy Live Stock & Real Estate Co.*, 69 Fed. 886; *Coombs, Petitioner*, 127 Mass. 278.

Appellants cite *United States v. Rickert*, 106 Fed. 1. In that case the taxing authorities of South Dakota sought to tax as personal property the improvements made upon lands allotted to Indians. It was held that under a statute of that state declaring that, for the purpose of taxation, personal property shall include improvements by persons on lands held by them under the laws of the United States, such improvements on the lands of the Indians were taxable. Taxation of the lands was not involved, and the case rested entirely upon the power of the state to tax personal property of the Indians. The question presented was entirely different from that involved in an effort to tax lands the title to which is, at least in part, retained by the United States.

*Board of Commissioners v. Godfroy*, 27 Ind. App. 610 (60 N. E. 177), decided by the appellate court of Indiana, is also cited. There an Indian sought to have his lands relieved from taxation by virtue of the ordinance of 1787, which provided that the lands of the Indians in the particular territory should never be taken from them without their consent. It was held that the privilege extended was to the Indians as a tribe, and not to individual members

thereof who have severed the tribal relation; that when an Indian severed his tribal relation he was "no longer the individual named in that ordinance." The ordinance did not recognize separate allotments or holdings, as is now done by the statutes of the United States, but referred to the lands of the tribes, each as an entirety, and to that condition only was the prohibition applied. However, much of the reasoning in the above case does not seem to us to harmonize with that of the federal cases cited above.

*Hatch v. Ferguson,* 57 Fed. 959, simply holds that an Indian woman who is married to a citizen of the United States, and has voluntarily taken up her residence separate and apart from her tribe, having adopted civilized life, becomes a citizen of the United States and of the state in which she resides, and may maintain a suit in the federal courts against citizens of other states.

*United States v. Elm,* 25 Fed. Cases, p. 1006, and *State ex rel. Crawford v. Norris,* 37 Neb. 299 (55 N. W. 1086), seem to deal only with the power of congress to confer citizenship upon Indians, carrying the right to vote, etc. Such power is not questioned by respondents here.

In *Pennock v. Commissioners,* 103 U. S. 44, a woman of mixed and half-Indian blood having refused to follow her tribe to Indian Territory, whither they went under a treaty by which they exchanged their lands in Kansas for other lands in Indian Territory, to which woman a patent in fee simple had been issued under a provision of the treaty to lands in Kansas, was held to have absolute title, and the lands were subject to taxation in Kansas. The conditions were therefore wholly different from those in the case at bar.

The above is a review of the cases cited by appellants. We are of the opinion, for reasons heretofore assigned, that

respondents' complaint shows them to hold these lands under the law of 1884, and that they are subject to the twenty-five-year restriction against alienation.

In *Page v. Pierce County,* 25 Wash. 6, 13 (64 Pac. 801), this court said:

"    .    .    .    it would seem reasonably clear that the lands in question cannot be taxed by the state so long as the government has an interest in them, 'either legal or equitable,' or is even charged with the performance of some obligation or duty respecting them."

The government has not yet relinquished its full title to these lands, and they are therefore not taxable, within the above ruling.

The demurrer was properly overruled, and the judgment is affirmed.

REAVIS, C. J., and WHITE, FULLERTON, ANDERS, MOUNT and DUNBAR, JJ., concur.