## SEAPLES v. CARD et al.

(District Court, E. D. Washington, N. D. September 23, 1915.)

### No. 2257.

1. INDIANS ⬅15(2)—PUBLIC LANDS—PATENTS—STATUTES—RESTRAINT ON ALIENATION.

Where, under Act March 3, 1875, c. 131, § 15, 18 Stat. 420 (Comp. St. 1916, § 4611), declaring that any Indian born in the United States, who is the head of a family, or who has arrived at the age of 21 years, and who has abandoned his tribal relations, shall, on making satisfactory proof of such abandonment, under rules to be prescribed by the Secretary of the Interior, be entitled to the benefits of the act entitled "An act to secure homesteads to actual settlers on the public domain," provided that the title to lands acquired by any Indian shall not be subject to alienation for a period of 5 years from the date patent is issued, an Indian, who had abandoned his tribal relations, applies for and makes final proof on a homestead, paying the fees prescribed, he is entitled to a patent with only a 5-year restriction on alienation, notwithstanding the patent was not executed until after the passage of Act July 4, 1884, c. 180, 23 Stat. 96 (Comp. St. 1916, § 4612), declaring that such Indians as may now be located on public lands, or as may, under the direction of the Secretary of the Interior or otherwise, so locate, may avail themselves of the provisions of the homestead laws as fully as may now be done by citizens of the United States, that to aid such Indians in their selection an appropriation shall be made, and no fees or commissions charged, and that all patents shall declare that the United States will hold the land thus entered for a period of 25 years in trust for the sole use and benefit of the Indians by whom such entry shall have been made, etc., for the latter act was not an amendment or repeal of the first; privileges granted to a certain class by a special act not being affected by inconsistent legislation, unless contrary intent of the legislative body is clearly expressed or indubitably inferable therefrom.

2. INDIANS ⬅15(2)—PUBLIC LANDS—PATENTS—RESTRICTIONS ON ALIENATION.

In such case, where original entry was made May 8, 1885, by an Indian who had abandoned his tribal relations, under the act of 1875, and after his death final proof was made by his surviving widow, pursuant to the act of 1884, no fees being paid, the trust patent to the widow is subject to the 25-year restriction on alienation.

3. INDIANS ⬅15(2)—PUBLIC LANDS—PATENTS—CANCELLATION—RESTRAINT ON ALIENATION.

Where an Indian obtained a trust patent to a homestead under Act July 4, 1884, providing that patents to Indians located on homesteads shall be of legal effect, and declaring that the United States does and will hold the land entered for a period of 25 years in trust for the sole use and benefit of the Indian, the land office is without authority thereafter to cancel the patent and issue a new patent without any restriction, pursuant to Act Feb. 8, 1887, c. 119, § 6, 24 Stat. 390 (Comp. St. 1916, § 3951), declaring that every Indian born within the territorial limits of the United States, who has abandoned his tribal relations, shall be a citizen of the United States and entitled to all the rights, privileges, and immunities of a citizen, regardless of whether such Indian has been or not, by birth or otherwise, a member of any tribe of Indians, for the conferring of citizenship on Indians did not deprive Congress of the right to impose restrictions on their alienation of homesteads pre-empted.

4. INDIANS ⬅15(2)—PATENTS—CANCELLATION.

In such case, Act May 8, 1906, c. 2348, 34 Stat. 182 (Comp. St. 1916, § 4203), amendatory of Act Feb. 8, 1887, § 6, providing that the Secretary of

⬅For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

the Interior may, in his discretion, whenever he shall be satisfied that any Indian allottee is competent and capable of managing his or her affairs, cause to be issued to such allottee a patent in fee simple, the Land Department having issued to an Indian under Act July 4, 1884, a trust patent to a homestead which imposed a 25-year restriction on alienation, cannot cancel such patent and issue one free from restrictions, the act of 1906 applying to allottees only.

5. INDIANS ⊕⟶15(2)—PATENTS—AUTHORITY OF LAND OFFICE—ATTACK ON PATENT.

A homestead patent was issued to a nontribal Indian under Act July 4, 1884, which pursuant to the terms of the act declared that the United States held the title in trust for the Indian for a period of 25 years. Thereafter, the Land Department assuming to act either under Act Feb. 8, 1887, § 6, or Act May 8, 1906, amendatory thereof, canceled the original trust patent and issued a new patent, giving the Indian title in fee simple.   *Held* that, as the Land Department was at all events still charged with the duty of issuing a further patent which would convey title to the Indian or his heirs, etc., discharged of the trust and free from all incumbrances, and as the issuance of patents was within the jurisdiction of the Land Department, the second patent, though the cancellation of the trust patent and its issuance was erroneous, was not void and cannot be collaterally attacked; the Indian having, after the issuance of the fee-simple patent, disposed of the land.

6. INDIANS ⊕⟶15(2)—JURISDICTION—RELIEF.

In such case, the Indian, having after the issuance of the fee-simple patent disposed of the land, was not, on the theory that the purchasers were chargeable with notice of her lack of power of alienation expressed in Act July 4, 1884, entitled to recover the land and secure a patent in fee simple, the period against alienation having expired, for the maxims of equity should to an extent be applicable to Indians, and it would be improper to charge a purchaser with notice of laws which the administrative department vested with power of their enforcement misinterpreted.

At Law. Ejectment by Mary Seaples, an Indian, against Ida B. Card and others. On demurrer to answer and counterclaim. Demurrer to certain defenses overruled, and as to others sustained.

Sam R. Sumner, of Wenatchee, Wash., for plaintiff.
Peters & Powell, of Seattle, Wash., for defendants.

RUDKIN, District Judge. This is an action of ejectment to recover possession of certain real property in Chelan county, this state. The right of recovery depends upon the following facts, which appear from the pleadings and an exemplified copy of the records of the General Land Office, which the parties agreed the court might consider in disposing of the demurrer interposed to certain affirmative defenses contained in the amended answer:

On the 8th day of May, 1885, Seaples, an Indian, who was born in the United States and had abandoned his tribal relations, made entry of the land in controversy under section 15 of the act of March 3, 1875 (18 Stat. 420, c. 131 [Comp. St. 1916, § 4611]), which provides that:

"Any Indian born in the United States, who is the head of a family, or who has arrived at the age of twenty-one years, and who has abandoned, or may hereafter abandon, his tribal relations, shall, on making satisfactory proof of such abandonment, under rules to be prescribed by the Secretary of the Interior, be entitled to the benefits of the act entitled 'An act to secure homesteads to actual settlers on the public domain,' approved May twentieth,

⊕⟶For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

eighteen hundred and sixty-two, and the acts amendatory thereof, except that the provisions of the eighth section of the said act shall not be held to apply to entries made under this act: Provided, however, that the title to lands acquired by any Indian by virtue hereof shall not be subject to alienation or incumbrance, either by voluntary conveyance or the judgment, decree, or order of any court, and shall be and remain inalienable for a period of five years from the date of the patent issued therefor."

The entryman died soon after the entry was made and on the 25th day of March, 1891, the plaintiff as his surviving widow submitted final proof in support of the entry. The proof was accepted and final certificate issued, which was followed by a patent under date of February 18, 1892. The patent contained the recital:

"That the United States of America, in consideration of the premises and in accordance with the provisions of the act of Congress of July 4, 1884, hereby declares that it does and will hold the land above described for the period of twenty-five years in trust for the sole use and benefit of the said Mary Seaples or in case of her decease of her heirs, according to the laws of the state where such land is located, and at the expiration of said period the United States will convey the same by patent to the said Mary Seaples or her heirs as aforesaid, in fee, discharged of said trust and free of all charge or incumbrance whatsoever."

The act of July 4, 1884 (23 Stat. 96, c. 180 [Comp. St. 1916, § 4612], referred to in the patent, provides as follows:

"That such Indians as may now be located on public lands, or as may, under the direction of the Secretary of the Interior, or otherwise, hereafter, so locate may avail themselves of the provisions of the homestead laws as fully and to the same extent as may now be done by citizens of the United States; and to aid such Indians in making selections of homesteads and the necessary proofs at the proper land offices, one thousand dollars, or so much thereof, as may be necessary, is hereby appropriated; but no fees or commissions shall be charged on account of said entries or proofs. All patents therefor shall be of the legal effect, and declare that the United States does and will hold the land thus entered for the period of twenty-five years, in trust for the sole use and benefit of the Indian by whom such entry shall have been made, or, in case of his decease, of his widow and heirs according to the laws of the state or territory where such land is located, and that at the expiration of said period the United States will convey the same by patent to said Indian, or his widow and heirs as aforesaid, in fee, discharged of said trust and free of all charge or incumbrance whatsoever."

Although the entry was made after the passage of the act of 1884, the application to enter was made under the act of 1875. This fact appears on the face of the application, and also from the payment of fees and commissions, which was not required under the act of 1884. On the other hand, final proof was submitted under the act of 1884. This fact likewise appears on the face of the record and from the fact that no fees were paid.

On the 15th day of March, 1907, the plaintiff made application to the register and receiver of the United States land office at Waterville, Wash., for a fee-simple patent for the land covered by her original patent, on the ground that she had taken up her residence separate and apart from any tribe of Indians and had adopted the habits of civilized life, and for other reasons not deemed material here. This application was transmitted to the Commissioner of the General Land Office, and under date of April 8, 1907, the Assistant Commissioner canceled

the patent of February 18, 1892, and directed the issuance of a fee-simple patent in lieu thereof. This action was taken under section 6 of the act of February 8, 1887 (24 Stat. 388, c. 119 [Comp. St. 1916, § 3951]), which provides, among other things, as follows:

"And every Indian born within the territorial limits of the United States to whom allotments shall have been made under the provisions of this act, or under any law or treaty, and every Indian born within the territorial limits of the United States who has voluntarily taken up, within said limits, his residence separate and apart from any tribe of Indians therein, and has adopted the habits of civilized life, is hereby declared to be a citizen of the United States, and is entitled to all the rights, privileges, and immunities of such citizens, whether said Indian has been or not, by birth or otherwise, a member of any tribe of Indians within the territorial limits of the United States without in any manner impairing or otherwise affecting the right of any such Indian to tribal or other property."

On the 12th day of June, 1907, a fee-simple patent without restrictions or limitations was accordingly issued to the plaintiff, and after its delivery she conveyed a part of the land thus patented to one Leah J. Prowell, and the residue to one W. R. Prowell. The remaining defendants claim title to separate parcels of the land under the Prowells.

Under the foregoing facts the plaintiff contends that the original patent was properly issued under the act of 1884; that the second patent, and the order of the Commissioner of the General Land Office canceling the first patent, are null and void; and that the restriction against alienation still obtains, notwithstanding the cancellation of the first patent and the issuance of the second. The defendants, on the other hand, contend that the patent should have been issued in the first instance under the act of 1875; that the 5-year limitation on the power of alienation had expired long before the issuance of the second patent; and that the plaintiff had full right and authority to convey at the time of the execution of the deeds under which the defendants claim. Other defenses presented by the answer and other questions discussed in argument will be referred to in the course of the opinion.

[1, 2] It has generally been assumed that the act of 1884 is supplementary to and amendatory of the act of 1875. Frazee v. Spokane County, 29 Wash. 278, 69 Pac. 779; Frazee v. Piper, 51 Wash. 278, 98 Pac. 760; Felix v. Yaksum, 77 Wash. 519, 137 Pac. 1037. Indeed, as early as 1888 the Attorney General of the United States said:

"I am of opinion that this act of 1884 was intended to be supplemental to and somewhat in modification of the act of 1875, and that its provisions apply to all entries made under the act of 1875 for which patents had not issued at the time the act of 1884 went into effect." 19 Opinions of Attorney General, p. 166.

This view of the law seems to have been generally followed by the Department, although many Indian patents have been found containing erroneous restrictions, or no restrictions at all. If the question were a new one, the correctness of this view is open to grave doubt. In speaking of these two acts in the well-considered case of Hemmer v. United States, 204 Fed. 898, 905, 123 C. C. A. 194, 201, Judge Sanborn said:

"The arguments in support of the contention that the act of 1884 so amended the act of 1875 as to extend the restriction upon alienation of homesteads

earned under the latter act have now been reviewed, and they seem to present no insuperable legal obstacle to the opposite conclusion. Let us now take up the two acts of Congress, apply to them the indubitable rules for the interpretation of statutes upon the same or similar subjects, and ascertain their true legal effect. The act of 1875 was a special law on the subject of Indian homesteads, limited to a small and specific class of Indians, those who had abandoned or should abandon their tribal relations, and it granted the right to homesteads, to members of this class only under the restriction of 5 years upon their alienation. The act of 1884 was a general law on this subject of Indian homesteads, and it granted to Indians, whether they had abandoned their tribal relations or not, rights to homesteads subject to restrictions for 25 years on their alienation. The first and most impressive characteristic of the latter act, when it is examined to ascertain its effect upon the earlier one, is that it contains no terms or words whatever that indicate any intent on the part of the legislators to amend, modify, repeal, or affect in any way the act of 1875, the restriction upon alienation there imposed, or any of its other provisions. The act of 1884 contains no reference to the act of 1875, or to any of its provisions, and it does not even contain a clause repealing acts or parts of acts inconsistent with its own provisions. Privileges granted to a certain class by a special act are not affected by inconsistent general legislation, unless a contrary intent of the legislative body is clearly expressed or indubitably inferable therefrom. But the special act and the general law stand together, the one as the law of the particular class and the other as the general rule."

I see no escape from the logic of that decision, and if the plaintiff in this case had made final proof and paid the land office fees under the act of 1875 I would feel constrained to hold that she was entitled to a patent under the provisions of that act with only a 5-year restriction upon alienation, and that a transfer made after the expiration of that period would be free from legal objection. But, while the entry was made under the act of 1875, the record shows that final proof was made under the act of 1884, and, having accepted the benefits of the latter act relieving her from the payment of the land office fees, she cannot escape its burdens among which is the restriction upon the power of alienation for a period of 25 years. This view of the law is in entire harmony with the decisions from this state, and with the decision in Hemmer v. United States, supra, because in the Hemmer Case every step up to and including the final proof, was taken under the act of 1875.

[3] Nor can I find any warrant or authority for the subsequent cancellation of the first patent. The land department seems to have assumed that the conferring of citizenship upon Indians who had severed their tribal relations and adopted the habits of civilized life is inconsistent with and abrogated the restrictions on alienation contained in the acts of 1875 and 1884. But there is no inconsistency between the acts of 1875 and 1884 and the act of 1887 in this regard. It was clearly within the power of Congress to grant to the Indians such title as it chose, and with such restrictions as it saw fit to impose, just as it has provided that homesteads are not liable for debts contracted prior to the issuance of patent. The restriction against alienation was imposed to protect the Indian against his own improvidence and the machinations of the white man, and the conferring of citizenship on the Indian neither increased the sagacity of the one nor lessened the cupidity of the other. Indeed, the very act which conferred the boon of citizenship on the Indian in an earlier section imposed restrictions on the

alienation of the allotment of the newly made citizen. Frazee v. Spokane County, supra; Beck v. Flournoy Live Stock & Real Estate Co., 65 Fed. 30, 35, 12 C. C. A. 497.

For these reasons, I am of opinion that the order canceling the patent cannot be sustained for the reasons assigned by the Assistant Commissioner of the General Land Office. Nor, in my opinion, can it be sustained on the other grounds suggested in argument.

[4] My attention was directed to the act of May 8, 1906, amendatory of section 6 of the act of February 8, 1887 (34 Stat. 183, c. 2348 [Comp. St. 1916, § 4203]), providing:

"That the Secretary of the Interior may, in his discretion, and he is hereby authorized, whenever he shall be satisfied that any Indian allottee is competent and capable of managing his or her affairs at any time to cause to be issued to such allottee a patent in fee simple, and thereafter all restrictions as to sale, incumbrance, or taxation of said land shall be removed and said land shall not be liable to the satisfaction of any debt contracted prior to the issuing of such patent."

This act is by its terms limited to Indian allottees and confers no authority upon the Secretary of the Interior to cancel patents issued under the act of 1875 or the act of 1884. Why the Secretary of the Interior should be authorized to remove the restriction on alienation in the case of Indian allottees, and not of Indian homesteaders, under the acts of 1875 and 1884, I do not know, and am not at liberty to inquire. Suffice it to say that Congress has spoken, and has granted the authority in the one case, but not in the other.

[5] If I am correct in these conclusions, the order canceling the trust patent was erroneous; but it does not follow from this that the second, or fee-simple, patent is void, or that the plaintiff is entitled to recover. For, as said by Judge Sanborn in United States v. Winona & St. P. R. Co., 67 Fed. 948, 955, 15 C. C. A. 96, 103:

"A patent issued by the officers of the Land Department of the United States, in a case within the scope of their power or jurisdiction, is dual in its effect: It is an adjudication of those officers that the patentee is entitled to the land under the laws of the United States, and it is a conveyance of the title to that land to the patentee. By Act March 3, 1849 (9 Stat. c. 108, p. 395, § 3; Rev. St. § 441 [Comp. St. 1916, § 681]), the Secretary of the Interior is charged with the supervision of the public business of the United States relating to the public lands; and by Act March 3, 1857, supra, as amended by Act May 12, 1864, supra, the power was conferred and the duty imposed upon him to indicate the lands granted to the Winona Railroad Company by those acts of Congress in all cases. By the act of July 4, 1836 (5 Stat. c. 352, § 1; Rev. St. § 453 [Comp. St. 1916, § 699]), the Commissioner of the General Land Office is required to perform, under the direction of the Secretary of the Interior, all executive duties appertaining to the surveying and sale of the public lands of the United States, or in any wise respecting such public lands, and also such as relate to private claims of land, and the issuing of patents for all grants of land under the authority of the government.' The Land Department of the United States, then, including in that term the Secretary of the Interior, the Commissioner of the General Land Office, and their subordinate officers, constitutes a special tribunal, under these and other provisions of the laws of the United States, vested with the judicial power to hear and determine the claims of all parties to the public lands it is authorized to dispose of, and to execute its judgments by conveyances to the parties entitled to them. When a claim under a grant for a railroad company is made to a portion of the public lands under its control, that tribunal must determine whether or not

the claimant is the beneficiary of the grant, whether or not it has so far complied with its conditions that it is entitled to its benefits, whether or not the public land claimed is a portion of the grant, and whether or not any other party has a superior right to it. When a claim is made under the homestead or pre-emption laws for a portion of the public domain that is subject to its disposition, that tribunal must determine whether or not the claimant is qualified to acquire lands under the terms of those laws, whether or not the land claimed was subject to pre-emption or to entry for a homestead, and whether or not the claimant has so complied with the requirements of those laws as to entitle him to the title to the land. Similar questions must be heard and determined by that department whenever any portion of the public land subject to disposition by that tribunal is sold or otherwise disposed of in any way. In every case there must, in the nature of things, be a decision of questions of fact and of questions of law, because in every case the ultimate question is whether or not the facts proved show that the claimant is entitled to the land under the acts of Congress. A certificate or patent is the record evidence of the judgment of this tribunal, and it necessarily follows that, when such a judgment is rendered in a case within the jurisdiction of the Land Department, it is, like the judgments of other special tribunals vested with judicial powers, impervious to collateral attack."

In the case of King v. McAndrews, 111 Fed. 860, 863, 50 C. C. A. 29, 31, the same learned judge said:

"The Land Department of the United States, including in that term the Secretary of the Interior, the Commissioner of the General Land Office, and their subordinate officers, constitutes a special tribunal, vested with judicial power to hear and determine the claims of all parties to the public lands which it is authorized to dispose of, and with power to execute its judgments by conveyances to the parties entitled to them. * * * A patent of land within its jurisdiction, issued by the Land Department, is the judgment of that tribunal, and a conveyance of the legal title to the land to the patentee in execution of the judgment. When such a patent to land within the jurisdiction of the department is issued, it is, like the judgments of other judicial tribunals, impervious to collateral attack. The test of the jurisdiction of this tribunal is the true answer to the question: Had the department the power to hear and determine the claims of the applicants of the land and to dispose of it in accordance with its decision? If that question can be answered in the affirmative, the Land Department had jurisdiction of the case, and the patent which evidences its decision conveys the legal title, and is impervious to collateral attack. If it must be answered in the negative, then its conveyance is void, and is as vulnerable in a collateral action at law as in a direct proceeding in equity to avoid it. Land the title to which has passed from the United States before the claim on which the patent is based was initiated, land reserved from sale and disposition for military or other like purposes, land reserved by a claim under a Mexican or Spanish grant sub judice, and land for the disposition of which Congress has made no provision, is not intrusted to the disposition of the Land Department, is not within its jurisdiction, and hence its patents for such land are void on their face, and may be collaterally attacked in an action at law. * * * But land which the department is vested with the power and charged with the duty to hear and decide the claims of applicants for, and to dispose of in accordance with its decisions, is within its jurisdiction, and its patent of such land conveys the legal title to it, and is impervious to collateral attack, whether its decision is right or wrong. * * * The test of jurisdiction is not right decision, but the right to enter upon the inquiry and to make some decision. * * * Hence a patent evidencing an erroneous decision of a question of law or a mistaken determination of an issue of fact, which the department was vested with the power, and charged with the duty, to decide, is as impervious to collateral attack as one which is the result of correct conclusions. The remedy for an error of law in the action of the department regarding the title to land intrusted to its disposition is by a direct proceeding by a bill in equity to correct it."

These rules are plainly deducible from the decisions of the Supreme Court, many of which are carefully reviewed in the two opinions referred to. Let us apply these rules to the facts in this case. The Land Department had jurisdiction over this land, and was charged with the duty of determining all claims thereto, and of issuing patents in execution of its judgment to those thereto entitled. This jurisdiction was not lost through the issuance of the first or trust patent. Indeed, it is a misnomer to call that instrument a patent at all. It is a naked declaration of trust, conveying no title. The title still remained in the United States, and the Land Department was still charged with the duty of issuing a further patent, which would convey the fee to the Indian or his widow and heirs "discharged of said trust and free of all charge or incumbrance whatsoever." The Land Department had jurisdiction to determine who was finally entitled to the fee-simple patent and when that patent should issue. In the determination of these questions the Department may have erred, but that error did not affect its jurisdiction or render its patent void. The error, if any, cannot be corrected by a court of law, nor can the decision be attacked in a collateral way. It may be urged that the disability of the Indian was created by statute, and not by the patent, and that the restriction against alienation exists, notwithstanding the form of the patent. This may be true in a measure; but in cases such as this, where there has been a formal adjudication by a competent tribunal that the party is entitled to a conveyance in fee, discharged of the trust and free of all charge or incumbrance whatsoever, that adjudication cannot be set aside or ignored by a court of law.

[6] The claim of the plaintiff is unconscionable and utterly devoid of equity at best. She says in substance that she applied to the Land Department for a fee-simple patent, to which she was not entitled, and obtained it; that she sold this title, and received a full consideration, to which she was not entitled, and still retains it; and now she seeks to again recover a title to which she is not entitled, for, if she recovers here, she recovers the fee, and not a mere possessory right. The government is asserting no claim to the property, and can assert none by reason of the statute of limitations and the lapse of time. I cannot believe that the courts are powerless to prevent such an injustice as would result from a recovery in this case; but, if they are, Congress should at once come to the relief of those who have parted with their money in reliance upon a patent issued by competent authority. It may be said that the defendants are chargeable with notice of the disability under which the plaintiff labors, and this is in a measure true; but it would be indeed a harsh rule that would charge them with a knowledge of the law superior to that possessed by the officers who are specially charged with its administration. The plaintiff, as a citizen of the United States, is subject to the laws of the state, and entitled to all the rights, privileges, and immunities of such citizens; but those who deal with her are entitled to some consideration. The courts have gone far to protect the Indians against their improvidence and the wiles of the whites, and properly so; but as citizens of the United States the Indians are subject to the laws of the state, and the doors of chancery

should not be entirely closed against those who deal with them. The maxims of equity apply to all, and in the slow process of civilization they should acquire some of our virtues along with our vices.

These views are perhaps decisive of the case, so that it will be unnecessary to refer in detail to the different defenses interposed by the answer. Suffice it to say that the demurrer to the first, second, third, and fourth defenses and the counterclaim is overruled, and the demurrer to the fifth and sixth affirmative defenses is sustained.

Let an order be entered accordingly.