JAEDICKE et al. v. UNITED STATES.

(Circuit Court of Appeals, Eighth Circuit. February 14, 1898.)

No. 937.

1. ACCOUNTS AND COMPENSATION OF POSTMASTERS—AUTHORITY OF POSTMASTER GENERAL.

Act June 17, 1878, authorizing the postmaster general in his discretion, when satisfied that a postmaster has made a false return of business, to withhold commissions on such returns, "and to allow any compensation that under the circumstances he may deem reasonable," applies only to postmasters whose accounts are pending and unsettled, and gives the postmaster general no authority to make an order reducing the compensation of a postmaster after his accounts have been settled and allowed, and long after his term of service has expired.

2. SAME—POSTMASTER'S BOND.

The legal effect of a postmaster's bond is that he and his sureties will pay the actual loss which the government may sustain by any failure to discharge his duties faithfully; and, in an action thereon, an order made by the postmaster general for withholding commissions and fixing compensation, under Act June 17, 1878, is but prima facie evidence of the amount of the government's loss, which, nevertheless, is open to investigation and proof.

In Error to the District Court of the United States for the District of Kansas.

This was an action by the United States against August Jaedicke and others, sureties on his official bond as a postmaster, to recover money alleged to be due. There was a verdict and judgment for the plaintiff, and the defendants brought error.

David Overmyer (Eugene Hagan, on the brief), for plaintiffs in error. I. E. Lambert, for the United States.

Before SANBORN and THAYER, Circuit Judges, and PHILIPS, District Judge.

SANBORN, Circuit Judge. August Jaedicke, one of the plaintiffs in error, was the postmaster of the United States at Hanover, in the state of Kansas, from May 21, 1889, until April 11, 1892, when he re-

signed. The other plaintiffs in error were the sureties on his bond. On April 19, 1895, the United States brought an action on this bond, and after a jury trial obtained a judgment for $581.05, which this writ of error was sued out to reverse. Jaedicke was a postmaster of the fourth class, and during his term of service his compensation consisted of box rents collected and certain commissions on postage stamps canceled upon matter actually mailed at his office. He made quarterly returns during his term of office, and his accounts were finally allowed and settled, and a balance of $76.30 was paid to him upon this final settlement, on August 30, 1893. On February 7, 1894, the postmaster general made this order:

"Postoffice Department—Office of the Postmaster General.

"Washington, D. C., February 7, 1894.

"Order No. 37. Being satisfied that August Jaedicke, late postmaster at Hanover, Washington Co., Kansas, has made false returns of business in the postoffice at said place during the period from May 21, 1889, to March 31, 1892, thereby increasing his compensation beyond the amount he would justly have been entitled to have by law; now, in the exercise of the discretion conferred by the act of congress entitled 'An act making appropriations for the service of the postoffice department for the fiscal year ended June 30, 1879, and for other purposes,' approved June 17, 1878 (section 1, c. 259, p. 186, Supp. Rev. St.), I hereby withhold commissions on the returns aforesaid, and allow as compensation (in place of such commissions and in addition to box rents and commissions on sales of waste paper, twine, etc.), deemed by me under the circumstances to be reasonable, during the period aforesaid, at the rate of $145 a quarter from May 21, 1889, to March 31, 1892, and the auditor is requested to adjust his accounts accordingly.

"[Seal.]                              W. S. Bissell, Postmaster General."

The auditor complied with the order, and readjusted the accounts of Jaedicke for the entire term of his office on the basis prescribed thereby. The result of this restatement of his accounts was to bring him into debt to the government in the sum of $527.49. There was no controversy over the facts we have recited, but the evidence was contradictory as to the falsification of the returns and as to the amount of loss which the government had sustained thereby, if there was any falsification. The theory of the action was not that the government was entitled to recover upon the bond the amount which it had actually lost through the delinquency of the postmaster, but that it was entitled to recover the amount of $527.49 and interest, upon the adjudication and order of the postmaster general, regardless of the loss it actually sustained. There are many errors assigned, but the vital one is that this theory was wrong, and that the court, which adopted it, erred when it instructed the jury as follows:

"If Mr. Jaedicke did make false returns with a view to increase his compensation, then the postmaster general had the right to take the action he did in this case, and fix the compensation of the defendant August Jaedicke. So you have to determine, gentlemen of the jury, that fact, from the evidence in this case. Were these returns made by Mr. Jaedicke correct and true? If so, then he is entitled to a verdict in his favor. If you find, however, that he made false returns, with the purpose of increasing his compensation, then the postmaster general, upon being satisfied of that fact, had the right to fix the compensation which he did in this case, and the government is entitled to a verdict for the amount that it claims. You do not have to go into and take an accurate account between the government and the defendant August Jaedicke, and strike a balance; but you do have to go into the evidence far enough to ascertain the one

fact, whether or not this defendant made false returns of his business. You do not have to run his accounts through, if you find he made false returns, to ascertain whether the government was defrauded out of the five hundred and odd dollars: but if he made false returns of his business, with the intention of increasing his compensation, then the postmaster general had the right to act, and his action is justified by law, and we are not here to question it."

The acts of congress which are worthy of consideration in determining the soundness of this instruction are:

"The sixth auditor shall receive all accounts arising in the postoffice department, or relative thereto, with the vouchers necessary to a correct adjustment thereof, and shall audit and settle the same and certify the balances thereon to the postmaster general. He shall keep and preserve all accounts and vouchers after settlement. He shall close the account of the department quarterly, and transmit to the secretary of the treasury quarterly statements of its receipts and expenditures. * * *" Act March 3, 1875, c. 128, § 4 (18 Stat. 343); Rev. St. § 277, subd. 7, p. 47.

"That in any case where the postmaster general shall be satisfied that a postmaster has made a false return of business, it shall be within his discretion to withhold commissions on such returns, and to allow any compensation that under the circumstances he may deem reasonable." Act June 17, 1878 (20 Stat. 140, 141); Supp. Rev. St. p. 186, c. 259, § 1.

"That the postmaster general shall make all orders relative to the salaries of postmasters; and any change made in such salaries shall not take effect until the first day of the quarter next following the order; and the auditor shall be notified of any and all changes of salaries." Act March 3, 1883, c. 142, § 3 (22 Stat. 602); Supp. Rev. St. § 3, p. 419.

Under the act of 1878 the postmaster general made an ex parte order in this case 21 months after the term of office of this postmaster had expired, and five months after his account had been finally settled and its balance paid, by which he changed his compensation for the entire term of his office, and thereby created an indebtedness of $527.49 from him to the government. On the trial, the court instructed the jury that upon this order the United States could recover the amount of this indebtedness if the postmaster had falsified his accounts in any amount, and that the amount of loss which the government had sustained by the falsification was not open for their consideration. If these rulings are right, the postmaster general may change the compensation of any man who has been a postmaster at any time since the foundation of this government, and has falsified his accounts in the smallest amount, may thereby create an indebtedness from him to the government for such an amount as he deems proper, regardless of the sum which the government has lost by his delinquency, and his order in the premises will be conclusive of its propriety and of the amount which the United States may recover in an action upon the ex-postmaster's bond, if the jury find that any of his accounts have been falsified in the least degree. The statement of such a proposition is its refutation. It rests upon an entire misconception of the scope and effect of the act of June 17, 1878. The postmaster general has jurisdiction over, and authority to settle and readjust, the accounts of postmasters; but citizens who have ceased to be postmasters, and whose accounts have already been finally adjusted and settled, do not fall within his jurisdiction for trial and punishment without notice or hearing. The object of the act of 1878 was to enable the postmaster general to exercise his discretion in allowing compensation to, and withholding commissions from, postmasters who

had falsified their returns, and whose accounts were still pending and unadjusted in his office. Its purpose was to facilitate the adjustment of pending accounts, not to grant the power to create indebtedness and manufacture evidence against citizens who were not within the jurisdiction of the department. The terms of the act are apt and fitting to accomplish this purpose, but they go no further. The only authority which they vest in the postmaster general is "to withhold commissions on such [falsified] returns and to allow any compensation that under the circumstances he may deem reasonable." By its very terms this power could be exercised only when the accounts of the postmaster were pending and unsettled, because then only would there be commissions to withhold or compensation to allow. In the case of an account that had been settled and closed, like that of the plaintiff in error, the postmaster general can withhold no commissions, because he has none to withhold, and his act allowing compensation is an idle ceremony, because all the compensation has been allowed and has been paid. Any other construction would give to the postmaster general the power to make retroactive orders changing the amount of liability of ex-postmasters to the government without notice or hearing. An interpretation which gives to a law, an order of a department, or a decision of a court the vicious effect of retrospective action should always be carefully avoided. Shreve v. Cheesman, 32 U. S. App. 676, 689, 16 C. C. A. 413, 417, and 69 Fed. 785, 792; Bank v. Reithmann, 49 U. S. App. 144, 25 C. C. A. 101, and 79 Fed. 582. The act of March 3, 1883 (Supp. Rev. St. § 3, p. 419), provides that changes in the salaries of postmasters shall not take effect until the first day of the quarter next following the date of the order making them. It may be that a proper order of adjustment of the pending accounts of a postmaster under the act of 1878 would not fall under the ban of this act of 1883, but it is a striking illustration of the policy of congress to prevent, whenever it is possible, retroactive laws, decisions, or orders. Yet in the case in hand the order of the postmaster general changed the compensation and fixed the salary of this postmaster for the entire term of his service 21 months after that term had expired. We have searched the act of 1878 in vain for the grant of any power to the postmaster general to either change the salary or fix the compensation of an ex-postmaster after his accounts have been finally settled, or to determine, in his discretion, what amount the government shall recover on account of the falsification of his accounts. The order of February 7, 1894, on which this action was based, was made in a case beyond the jurisdiction of the post-office department, and was without authority and void.

Again, if this order had been made in a case within the jurisdiction of the department, neither the order itself, nor the account of the auditor based upon it, would have been conclusive evidence of the amount which the government was entitled to recover upon this bond. The legal effect of the bond was not that the principal and his sureties would pay such an amount as the postmaster general might, in his discretion, name, or such an amount as the sixth auditor of the treasury might find to be due from Mr. Jaedicke, if he failed to discharge his duties faithfully. It was that they would pay the actual loss which the government sustained by such a failure. The order of the post-

master general, and the account of the sixth auditor based upon it, could not make that loss larger or smaller. After the falsification was established, the question was, how much has the government lost by it? That question was to be answered by a consideration of all the competent evidence upon the subject. U. S. v. Patrick, 36 U. S. App. 645, 656, 20 C. C. A. 11, 17, 18, and 73 Fed. 800, 806. If the postmaster general had had the power to make the order of February 7, 1894, that order, and the account based upon it, would undoubtedly have been prima facie evidence of the amount of the government's loss. But the instruction given to the jury that they were conclusive upon that question, and that the extent of the loss was not open for their consideration, would have been error even in that event. U. S. v. Dumas, 149 U. S. 278, 284, 13 Sup. Ct. 872; U. S. v. Eckford's Ex'rs, 1 How. 250; U. S. v. Hodge, 13 How. 478; Soule v. U. S., 100 U. S. 8, 11. The errors to which we have referred are fatal to the judgment and to the theory upon which this action is based. The judgment below is reversed, and the cause remanded, with directions to grant a new trial.