UNITED STATES v. SAUNDERS et al.

(Circuit Court, D. Washington, E. D. August 30, 1899.)

1. INDIANS—HOMESTEADS ON PUBLIC LANDS—STATUTORY PROVISIONS.
    Act Jan. 18, 1881 (21 Stat. 315), relating to homesteads acquired by Indians, is a special act, which, by its terms, applies only to the Winnebagoes of Wisconsin; and a clause in a patent issued to an Indian of a different tribe for a homestead acquired under the act of March 3, 1875, embodying the provision of section 5 of the act of 1881, which prohibits the alienation of the land for 20 years, is void.

2. SAME—EFFECT OF VOID LIMITATION IN PATENT.
    The insertion of such void limitation, however, in a paragraph separate from the granting clause, does not affect the validity of the patent to convey the land to the patentee, and he takes the title in fee simple, without any restrictions upon his power of alienation.

3. SAME—EFFECT OF ACT OF 1884.
    The provision of the general act of July 4, 1884 (23 Stat. 96), giving Indians the right to avail themselves of the homestead laws, and providing that patents for homesteads taken by Indians shall be of the legal effect,

and declare that the United States will 'hold the land in trust for 25 years, during which time it shall be exempt from taxation, is prospective only in its operation, and does not affect land to which an Indian had perfected his right of homestead, under the act of 1875, prior to its passage.

4. EQUITY JURISDICTION—SUIT BY UNITED STATES TO ANNUL DEED.
There is no ground upon which the United States can maintain a suit in equity against the grantees of an Indian who are in possession of land conveyed to such Indian by a patent issued by the land department, containing a provision prohibiting its alienation, for the purpose of annulling the deed to defendants, in the absence of a law forfeiting the grant in case of such alienation.

Suit in equity by the United States to annul a deed given by an Indian to the defendant Wirt W. Saunders, purporting to convey the title to the grantor's homestead. Heard on demurrer to the bill of complaint. Demurrer sustained.

Wilson R. Gay, U. S. Dist. Atty.
Jones, Belt & Quinn, for defendants.

HANFORD, District Judge. In the month of December, 1878, Quin-ne-mo-se, an Indian of the Cœur d'Alene tribe, filed in the proper district land office of the United States his application for 160 acres of land situated in this state, then Washington Territory, and within what is now the Spokane land district, as a homestead, to which he was entitled under the provisions of an act of congress approved June 3, 1875 (1 Supp. Rev. St. U. S. [2d Ed.] p. 78), which authorizes Indians born in the United States, and who abandon their tribal relations, to take up public land pursuant to the homestead law of 1862. In February, 1884, said Indian made his final proof, and received a patent certificate, and in June, 1888, a patent was issued to him similar in form to other homestead patents, except that, following the habendum clause, there is inserted a conditional clause as follows:

"This patent is issued upon the express condition that the title hereby conveyed shall not be subject to alienation or incumbrance, either by voluntary conveyance or by judgment, decree, or order of any court, or subject to taxation of any character, but shall remain inalienable, and not subject to taxation for the period of twenty years from the date hereof, as provided by act of congress approved January 18, 1881."

The act of January 18, 1881 (21 Stat. 315), is a special act, which, by its title, and by specific provisions in the body thereof, is so limited as to affect only transactions with and rights of the Winnebago Indians of Wisconsin. The fifth section of the act is as follows:

"Sec. 5. That the titles acquired by said Winnebagoes of Wisconsin in and to the lands heretofore and hereafter entered by them under the provisions of said act of March third, eighteen hundred and seventy-five, shall not be subject to alienation or incumbrance, either by voluntary conveyance or by the judgment, decree, or order of any court, or subject to taxation of any character, but shall be and remain inalienable and not subject to taxation for the period of twenty years from the date of the patent issued therefor. And this section shall be inserted in each and every patent issued under the provisions of said act or of this act."

It is only by giving to the last sentence of this section a strictly literal construction that any color of authority can be shown for con-

necting patents issued to Indians other than the Winnebagoes of Wisconsin with this law; and, reading the whole section, including the last sentence, literally, it is impossible to discover a suggestion of a limitation upon any title other than "the title acquired by said Winnebagoes of Wisconsin." If the distinction between general and special statutes shall be ignored in this case, and if the last sentence of the section above quoted may be regarded as being an entirely distinct law, of general application, and broad as its terms, and mandatory in its character, still it is no more relevant to the rights of the defendants or their grantor than a verse from the first chapter of Genesis. It simply requires the insertion of the whole of section 5 in every patent issued pursuant to the act of March 3, 1875, as well as in those issued under this act of January 18, 1881, and the only effect which the insertion can have is to apprise all who read a patent in which it is inserted that all titles acquired by the Winnebagoes of Wisconsin to lands under the homestead law are inalienable by the grantees, and not subject to taxation for the full period of 20 years after the date of the patent issued therefor. A general law was passed by congress, and approved July 4, 1884, enabling Indians to avail themselves of the provisions of the homestead law as fully and to the same extent as citizens, and providing that patents for homesteads taken by Indians shall be of the legal effect and declare that the United States will hold the land thus entered for 25 years in trust for the sole use and benefit of the Indian by whom the entry shall have been made, or his widow and heirs, and will, at the expiration of said period, convey the same to said Indian or his widow and heirs "in fee, discharged of said trust, and free of all charge and incumbrance whatever." 1 Supp. Rev. St. U. S. (2d Ed.) p. 450. This law, however, was enacted after Quin-ne-mo-se had fully perfected his right to his homestead. It must be construed prospectively, and not retroactively. Therefore, in my opinion, it has no bearing on this case. The patent issued to Quin-ne-mo-se is a conveyance to him and to his heirs of the title in fee, and is in accordance with his rights under the laws which were in force from a time prior to the date of the filing of his homestead application until after he had fully complied with all requirements essential to the perfecting of his title. The condition in the patent is not coupled with the granting words, but is in a separate paragraph. It is separable from the grant, repugnant to the grant, not required nor authorized by any law, and is, in my opinion, void, and may be declared to be void without impairing the validity of the patent as a conveyance of the title to the patentee. From the fact that Quin-ne-mo-se made the proofs required to obtain a patent for the land under the homestead law, it may be fairly inferred that he was born in the United States, that he had voluntarily taken up his residence separate and apart from any tribe of Indians, and adopted the habits of civilized life. By reason of these facts, and by virtue of the sixth section of the act of congress approved February 8, 1887, known as the "Dawse Act" (1 Supp. Rev. St. U. S. [2d Ed.] p. 536), he was, at the time of giving the deed in question, a citizen of the United States, entitled to all the rights, privileges, and immunities of such citizens, including

the right to buy, sell, and convey the title to property. Having the full title to his homestead, and being under no legal disability to dispose of it, his deed to the defendant Saunders is not void nor voidable, but is a valid contract.

The bill of complaint is styled a "bill to quiet title to lands," but it would be contrary to all rules of equity practice to render a decree in this case for that form of relief, for the simple reason that the bill shows affirmatively that the defendants are in possession of the land. No reason is assigned for demanding equitable relief except that the deed given by Quin-ne-mo-se to Mr. Saunders, and the claims to the land now being asserted by the defendants, constitute a cloud upon the title of the United States. The case must have been commenced upon the theory that by obtaining a deed from an Indian Mr. Saunders acquired all his grantor's rights, and that said rights have been forfeited to the government by reason of the unlawfulness of the transaction, or else upon the theory that no confiscation of property is asked for, because the deed is absolutely void, and no property is conveyed thereby. Take either horn of the dilemma, and the result is the same, for there is no ground for an appeal to a court of equity. In the first place, the forfeiture of an estate is a penalty, which must be prescribed by law, or it will be not adjudged; and my attention has not been directed to any statute declaring a forfeiture for such causes as are in this bill set forth. In the second place, if the deed is void, it cannot cloud the title of the owner, nor justify the expense and bother of a suit. The case might very well have been disposed of by refusing the relief for which there is a specific prayer on the ground that a court of equity will not grant a decree quieting the title to real estate in favor of a party who lacks the first essential to that form of relief, viz. possession of the property, but upon the idea that possibly, under the general prayer, the government might be entitled to have the deed surrendered for cancellation, in order to prevent the fraudulent use of it, I have given consideration to the arguments of counsel upon the main question as to the validity of the deed given by Quin-ne-mo-se to Mr. Saunders, with the result already indicated; that is to say, I have reached the conclusion that said deed is a valid and effective instrument conveying the title to said Indian's homestead. Demurrer sustained.