HEMMER et al. v. UNITED STATES.

(Circuit Court of Appeals, Eighth Circuit.   December Term, 1912.)

No. 3,850.

*(Syllabus by the Court.)*

1. UNITED STATES (§ 126*)—CLAIMS OF UNITED STATES—EQUITY.
   In a suit in equity the claims of the United States appeal to the conscience of the chancellor with the same, but with no greater or less, force than those of a private individual under like circumstances, and they are determinable by the same rules and principles.
   [Ed. Note.—For other cases, see United States, Cent. Dig. § 115; Dec. Dig. § 126.*]

2. STATUTES (§ 162*)—CONSTRUCTION—SPECIAL AND GENERAL.
   Privileges granted to a certain class by special legislation are not affected by an inconsistent general law unless a contrary intent of the legislative body is clearly expressed, or indubitably inferable from the acts; but the special act and the general law stand together, the one as the law of the specific class and the other as the general rule.
   [Ed. Note.—For other cases, see Statutes, Cent. Dig. §§ 235–237; Dec. Dig. § 162.*]

3. PUBLIC LANDS (§ 106*)—EQUITABLE TITLES—JURISDICTION OF LAND DEPARTMENT.
   Neither the Land Department of the United States nor its officers has any jurisdiction by subsequent rulings and decisions to divest the equitable title to lands which becomes vested in pre-emptors, homesteaders,

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

and other like claimants by their final proof and their payment therefor in accordance with the acts of Congress.

[Ed. Note.—For other cases, see Public Lands, Cent. Dig. §§ 104, 301, 302; Dec. Dig. § 106.*]

**4.** PUBLIC LANDS (§ 106*)—RULINGS OF LAND DEPARTMENT—EFFECT.

The construction of statutes intrusted to them to enforce by officers of the Land Department, or of any other executive department, is persuasive and should not be overruled without good reason, but their opinions are not conclusive upon the courts.

It is the function and duty of the officers of the judicial department of a government, which they may not lawfully renounce, to exercise their own independent judgments, guided only by the established principles of law and the recognized canons of interpretation, in the construction of its statutes and to adjudge their just and true meaning, even though the officers of an executive department have construed them otherwise.

[Ed. Note.—For other cases, see Public Lands, Cent. Dig. §§ 104, 301, 302; Dec. Dig. § 106.*

Decisions of Land Department, their conclusiveness and effect, see notes to Hartman v. Warren, 22 C. C. A. 38; Carson City Gold & S. M. Co. v. North Star Min. Co., 28 C. C. A. 344; Uinta Tunnel M. & T. Co. v. Creede & C. C. M. & M. Co., 57 C. C. A. 207.]

**5.** INDIANS (§ 15*)—HOMESTEADS—RESTRICTIONS ON ALIENATION.

Act March 3, 1875, c. 131, § 15, 18 Stat. 420 (U. S. Comp. St. 1901, p. 1419), granted to nontribal Indians the right to acquire homesteads with the restriction of 5 years on alienation by a compliance with the homestead laws. Act July 4, 1884, c. 180, 23 Stat. 96 (U. S. Comp. St. 1901, p. 1420), granted to Indians, whether tribal or nontribal, the right to acquire homesteads with the restriction of 25 years on alienation without paying the fees or commissions of the land officers, by a compliance with the other requirements of the homestead law.

*Held*, the later act did not repeal, amend, or modify any of the provisions of the earlier act. It did not extend from 5 years to 25 years the restriction on alienation of the lands acquired by an Indian homesteader under the act of 1875.

[Ed. Note.—For other cases, see Indians, Cent. Dig. §§ 17, 29, 34, 37–44; Dec. Dig. § 15.*]

*(Additional Syllabus by Editorial Staff.)*

**6.** ESTOPPEL (§ 56*)—RULES.

In equity no one may successfully deny to the damage of another the truth of statements and representations by which he has purposely or carelessly induced that other to change his situation.

[Ed. Note.—For other cases, see Estoppel, Cent. Dig. § 142; Dec. Dig. § 56.*]

**7.** EQUITY (§ 1*)—JURISDICTION—PRINCIPALS.

A court of equity can act only on the conscience of a party, and hence, if a party has done nothing that taints his conscience, no demand can attach upon it so as to give any jurisdiction.

[Ed. Note.—For other cases, see Equity, Cent. Dig. §§ 1, 3, 6; Dec. Dig. § 1.*]

**8.** STATUTES (§ 225*)—CONSTRUCTION.

All statutes in pari materia are to be read and construed together as if they formed part of the same statute and were enacted at the same time.

[Ed. Note.—For other cases, see Statutes, Cent. Dig. §§ 302, 303; Dec Dig. § 225.*]

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Appeal from the District Court of the United States for the District of South Dakota; James D. Elliott, Judge.

Suit in equity by the United States against Louis Hemmer and others. From an adverse decree (195 Fed. 790), defendants appeal. Reversed and remanded, with directions.

George Rice and Frederick A. Warren, both of Flandreau, S. D. (Warren & Shoemaker and Rice & Benson, all of Flandreau, S. D., on the brief), for appellants.

Edward E. Wagner, of Sioux Falls, S. D., for the United States.

Before SANBORN, Circuit Judge, and WILLIAM H. MUNGER and TRIEBER, District Judges.

SANBORN, Circuit Judge. The Act of Congress of March 3, 1875, 18 Stat. 402, 420, c. 131, § 15 (U. S. Comp. St. 1901, p. 1419), provided that any Indian who was the head of a family, or who had arrived at the age of 21 years, and had abandoned, or should thereafter abandon, his tribal relations, should be entitled to the benefits of the homestead law (Revised Statutes, §§ 2289, 2290, 2291 [U. S. Comp. St. 1901, pp. 1388–1390]), but that the title to the lands he should acquire should be inalienable for five years from the date of his patent therefor. Henry Taylor was such an Indian of the Sioux tribe. On October 7, 1878, he entered under this act the 160 acres of land in South Dakota, which is the subject of this suit, as his homestead. On June 10, 1879, he entered upon the actual occupation thereof and resided upon, occupied, and cultivated it with his family from that time until he sold it to J. E. Peart on August 8, 1908. The homestead law provided, section 2291, that any one who for five years after his entry resided on and cultivated his homestead and complied with the terms of the homestead law should be entitled to a patent therefor upon proof of compliance at any time within two years after the expiration of the five years. On June 10, 1884, Taylor had so complied with the terms of this law, and he was entitled to a patent to his land under the act of 1875 upon proof of his compliance made at any time before June 10, 1886. He made his final proof, paid for the land, and obtained his final receiver's receipt on December 11, 1884.

On July 4, 1884, after Taylor had completed his five years of residence and cultivation of his homestead and thus had completely earned it, Congress passed an act which provided that any Indians who then were or should thereafter be located on the public lands might avail themselves of the homestead laws, that $1,000 was appropriated to aid them in selecting and proving these homesteads, that no fees or commissions should be charged for their entries and proofs, and that their patents should declare that the United States would hold their lands for 25 years in trust for them and at the end of that time would convey the title thereof to them respectively. On June 6, 1890, the United States issued to Taylor a patent to his homestead which, by mistake, declared that his land was inalienable for 20 years as provided by an act of Congress approved January 18, 1891, relating to the Winnebago Indians, which had no relevancy to his case or his title. On June 10, 1909, the government issued another patent to Taylor for this land

which declared that it was issued in lieu of the previous patent which had been canceled, that in accordance with the provisions of the act of July 4, 1884, the government would hold his land in trust for him for 25 years and would convey it to him at the end of that time. On August 8, 1908, Taylor sold this land and delivered the possession of it, and that possession and whatever title Taylor could convey have passed by sufficient deeds to the defendant below Louis Hemmer. On July 28, 1909, the United States brought this suit in equity against the immediate and remote grantees of Taylor for the purpose of setting aside all the conveyances under which they held, against the treasurer and auditor of Moody county, wherein the land was situated, against a claimant under a tax sale, and against a judgment creditor of Taylor, for the purpose of avoiding their liens upon the land, upon the ground that this homestead was inalienable, exempt from taxation and from judgment liens for 25 years after the date of the patent issued under the act of 1884. The court below rendered a decree to that effect, which is challenged by this appeal.

If when the conveyances here in question were made and the liens were placed Taylor's homestead was subject to the restrictions upon alienation and taxation prescribed by the act of July 4, 1884, the decree below was right (Heckman v. United States, 224 U. S. 413, 32 Sup. Ct. 424, 56 L. Ed. 820), and the question whether or not it was so subject must be determined by the acts of Congress and not by the terms of the patents issued to Taylor (United States v. Saunders [C. C.] 96 Fed. 268; Frazee v. Spokane County, 29 Wash. 278, 69 Pac. 779). The patents and their terms are therefore here dismissed, and we turn to the sole question in the case: Did the act of July 4, 1884, which was not passed until after Taylor had completely earned the title to his homestead subject to the restriction of only 5 years upon its alienation imposed by the act of 1875, so amend that act as to extend that restriction to 25 years?

The United States offered this land to Taylor by the act of 1875, free from all restrictions upon alienation after five years from the date of his patent, on the sole condition that he would reside upon and cultivate it and endure the toils and privations of frontier life for five years. That offer he accepted in the only way in which it could be accepted, by five years of actual residence, occupation, and cultivation of the land. He proved his compliance with the offer to the satisfaction of the government, paid the prescribed fees for his final entry, and obtained his final receipt therefor under the act of 1875, and the purchasers from him have bought his land and paid for it in reliance upon this act of Congress and these facts. These purchasers, the grantees under Taylor, stand in his shoes. They have every legal right and every equitable right and title which he held.

[1] This is a suit in equity. In such a suit the claims of the government appeal to the conscience of the chancellor with no greater or less force than those of a private individual under similar circumstances. United States v. Stinson, 197 U. S. 200, 201, 202, 205, 25 Sup. Ct. 426, 49 L. Ed. 724; United States v. Detroit Timber & Lumber Co., 131 Fed. 668, 677, 67 C. C. A. 1, 10; State of Iowa v. Carr, 191 Fed. 257, 267, 112 C. C. A. 477, 487.

[6] In equity no one may successfully deny to the damage of another the truth of statements and representations by which he has purposely or carelessly induced that other to change his situation. By its offer by the act of 1875 of the title to and the full power of disposition of this land at the end of ten years in consideration of its occupation and cultivation for five years, the United States induced Taylor to earn it and the grantees under him to buy and pay for it, and it ought to be estopped now from repudiating or modifying its offer and representations to their injury. Illinois Trust & Savings Bank v. City of Arkansas City, 76 Fed. 271, 293, 22 C. C. A. 171, 193, 34 L. R. A. 518; Paxson v. Brown, 61 Fed. 874, 881, 10 C. C. A. 135, 142; Union Pacific Railway Co. v. Chicago, R. I. & Pac. Ry. Co., 51 Fed. 309, 326, 327, 2 C. C. A. 174, 191, 192.

[7] "A court of equity can act only on the conscience of a party. If he has done nothing that taints it, no demand can attach upon it so as to give any jurisdiction." Boone v. Chiles, 10 Pet. 177, 209 (9 L. Ed. 388); United States v. Detroit Timber & Lumber Co., 131 Fed. 668, 677, 678, 67 C. C. A. 1, 10, 11; United States v. Winona & St. Peter R. R. Co., 67 Fed. 948, 961, 968, 15 C. C. A. 96, 109, 116.

It is difficult to find anything that the defendants have done in this case to taint their consciences. If A. had offered to convey to B. a tract of 160 acres of land with full power of disposition at the end of ten years in consideration that B. would settle upon, occupy, and cultivate it for five years, and B. had done so and the ten years expired, who would be so bold as to claim that there would be any jurisdiction in equity on a bill by A. to enjoin B. from selling or conveying the land during 20 years more?

Even when equities are equal the defendant prevails. It is only when the case of the complainant appeals to the conscience of the chancellor with the greater force that he will interfere to grant relief. Town of St. Johnsbury v. Morrill, 55 Vt. 165, 169; 2 Pomeroy's Equity Juris. § 739. These principles of equity are very persuasive that the question here at issue ought not to be answered in the affirmative unless inexorable rules of law demand such an answer. What then are the arguments in support of an affirmative answer to this question? Counsel cite Frazee v. Spokane County, 29 Wash. 278, 69 Pac. 779, 782, and Frazee v. Piper, 51 Wash. 278, 98 Pac. 760; but they fail to sustain it.

In the former case nontribal Indians were trying to defeat tax titles. They had entered and taken possession of their land in 1883, but they had cultivated and occupied it until May 31, 1890, before they made their final proof. The court held that inasmuch as they had resided upon and cultivated their homestead more than five years after the passage of the act of 1884 before they made their final proof they had the option to prove up and take their patents under the act of 1884 with a restriction of 25 years on alienation and taxation, and that as they had done so their lands were not taxable within that period. In the latter case the Indian homesteader challenged a contract of sale which he had made, on the ground that his land had been entered and patented under the act of 1884 and was subject to the 25 years' restriction on alienation. He had first entered

and occupied it in 1883 and had resided upon and cultivated it from that time until May 31, 1890, when he made his final proof under the act of 1884, and he subsequently took his title under that act. The court held that inasmuch as he had resided upon and cultivated his land for five years after the passage of the act of 1884 before he made his final proof, and as he had taken his title under that act, his land was subject to the restriction for 25 years specified therein, but that "had Gregorie Frazee's right to the homestead been perfected under the act of 1875, and had he been entitled to make final proof under that act before the act of 1884 was passed" (as Taylor was), "a different condition would be presented, and the five years' restriction on his right of alienation for which the act of 1875 provided, would not have been extended by the act of 1884."

In United States v. Saunders (C. C.) 96 Fed. 268, 270, cited by the court below, a nontribal Indian entered in 1878, occupied and cultivated his homestead for the full five years under the act of 1875, and made his final proof before the act of 1884 was passed, and the court held that the act of 1884 imposed no further restriction upon his power of alienation. There is nothing in these cases favorable to an affirmative answer to the question at issue, and the decision in United States v. Saunders is a clear adjudication that it should be answered in the negative, for when Taylor had completely earned his land and had secured his final receipt for it under the act of 1875, his equitable title to it was perfected and could not be subsequently modified by any action of the officers of the Land Department.

The case of Tiger v. Western Investment Co., 221 U. S. 286, 31 Sup. Ct. 578, 55 L. Ed. 738, is drawn to our attention; but the decision in that case is inapplicable here. Tiger was an adult heir of an Indian allottee, the alienation of whose land was restrained for five years by section 16 of the Act of June 30, 1902, 32 Stat. 500, c. 1323. On April 26, 1906 (34 Stat. 137, c. 1876), the Congress passed an act which extended the restriction upon alienation of the lands of adult heirs of allottees to 25 years from the date of the approval of that act. That act expressly provided that all acts and parts of acts inconsistent with it were repealed. 221 U. S. 303, 31 Sup. Ct. 578, 55 L. Ed. 738. The Supreme court held that a conveyance by Tiger after the 5 years and within the 25 years was void. But the act of 1884, which conditions the decision of this case, contains no words or terms which either expressly or by reasonable implication extend the restriction prescribed by the act of 1875, and it contains no provision repealing that act, or any acts or parts of acts inconsistent with the act of 1884. This case must therefore be determined by other rules and principles than those applied by the decision in Tiger's Case.

Counsel present an argument upon which much reliance seems to be placed, which may be stated in this way: (1) The act of 1884 provides: "That such Indians as may now be located on the public lands, or as may * * * hereafter so locate, may avail themselves" of the homestead laws and acquire lands subject to a restriction upon alienation for 25 years. (2) The nontribal Indians who had entered homesteads under the act of 1875 were the only Indians located on

the public lands when the act of 1884 was passed. (3) Therefore the act of 1884 referred to the homesteaders under the act of 1875 and extended the restriction upon the alienation of their lands from 5 years to 25 years. It may be conceded that if the premises of this syllogism were sound, and if the homesteaders under the act of 1875 had availed themselves of the act of 1884, the restrictions upon their homesteads would have been extended to 25 years. But Taylor never availed himself of the provisions of the act of 1884. He made his final proof, paid for his land, and took his final receipt under the act of 1875. Moreover, the minor premise of the syllogism is without support in the record. There is neither pleading, nor admission, nor proof, that the homesteaders under the act of 1875 were on July 4, 1884, the only Indians located on the public lands. If that were the fact, this court has no judicial knowledge of it and no evidence on which to rely to sustain a finding of it, and with the fall of this premise the conclusion which depends upon it goes down.

The decision in the case of Shiver v. United States, 159 U. S. 491, 498, 499, 16 Sup. Ct. 54, 40 L. Ed. 231, to the effect that lands which have ceased to be "public lands" by their segregation therefrom by pre-emption, homestead, mining, and other like claims (Newhall v. Sanger, 92 U. S. 761, 763, 23 L. Ed. 769; Bardon v. Northern Pacific R. R. Co., 145 U. S. 535, 539, 12 Sup. Ct. 856, 36 L. Ed. 806; Hastings & Dakota R. R. Co. v. Whitney, 132 U. S. 357, 364, 10 Sup. Ct. 112, 33 L. Ed. 363; James v. Germania Iron Co., 107 Fed. 597, 603, 46 C. C. A. 476, 482; Hartman v. Warren, 76 Fed. 157, 160, 22 C. C. A. 30, 33; Neff v. United States, 165 Fed. 273, 281, 91 C. C. A. 241, 249), but to which the claimants have not perfected their title, are still so far lands of the United States that the government may protect them from waste by the cutting of timber or otherwise, as a remainderman may protect premises from waste by the occupant, is cited, and much is said of the power of the United States to withdraw such lands from disposition and to impose restrictions upon their alienation at any time before it parts with the title. But the extent of that power is not material to a decision of this case if no attempt was made to exercise it. Whatever its extent, it is vested in the Congress and not in the attorneys for the United States, the officers of the Land Department, or the courts. Their power and duty is limited in cases of this character to an administration and enforcement of the acts of Congress, and until it clearly appears that the Congress has attempted to impose a restriction by the act of 1884 upon homesteads acquired under the act of 1875, a consideration and discussion of its power to do so is deferred.

Finally, counsel invoke the rules that the construction of statutes by officers of executive departments charged with the duty of administering them should not be overruled without cogent reasons (United States v. Moore, 95 U. S. 760, 24 L. Ed. 588), and that a settled construction of such statutes by the officers of one of the great executive departments of the government should not be overruled unless it is clearly erroneous. But the most settled construction by the Land Department of the law applicable to this case is conceded by all parties to have been wrong. That was the construction evidenced

by the patent issued to Taylor in 1890 to the effect that his land was subject to a restriction on alienation of 20 years under the act of 1881 (Act Jan. 18, 1881, c. 23, 21 Stat. 315), which related to the Winnebagoes and had no relevancy to the rights of Taylor, who was a Sioux Indian. This construction remained settled until 1907, when the department ruled that the decision in United States v. Saunders (C. C.) 96 Fed. 268, 270, to the effect that the act of 1884 did not affect the restrictions upon the alienation of the lands of homesteaders under the act of 1875, was right and it was after and doubtless in reliance upon these decisions that the defendant Fletcher bought this land of Taylor in August, 1908. It was not until June, 1909, that the Land Department evidenced by the issue of the patent to Taylor of that date that it construed the act of 1884 to extend the restriction upon the alienation of his land from 5 years to 25 years. This last construction, however, is not as well settled as that of 1900, for it is not 5 years since it was adopted, and the construction of 1900 remained settled for about 7 years. There is not, therefore, any settled construction of these acts of Congress by the officers of the Land Department to prevent their true interpretation.

[3] Moreover, the Land Department and its officers are without jurisdiction by subsequent erroneous rulings and decisions to divest the equitable title to lands which becomes vested in lawful claimants under the pre-emption or homestead laws by their final proof and payment therefor in accordance with the acts of Congress. Cornelius v. Kessel, 128 U. S. 456, 461, 9 Sup. Ct. 122, 32 L. Ed. 482; Love v. Flahive, 205 U. S. 195, 199, 27 Sup. Ct. 486, 51 L. Ed. 768; James v. Germania Iron Co., 107 Fed. 597, 602, 46 C. C. A. 476, 481; Howe v. Parker, 190 Fed. 738, 739, 111 C. C. A. 466, 467.

[4] A decision of a question of law by the officers of the Land Department, or by any officer of any other executive department, is never conclusive upon the courts. Wisconsin Central R. R. Co. v. Forsythe, 159 U. S. 46, 61, 15 Sup. Ct. 1020, 40 L. Ed. 71; United States v. Murphy (C. C.) 32 Fed. 376, 380, 382; Northern Pacific Ry. Co. v. Sanders (C. C.) 47 Fed. 604, 609–612; United States v. Grand Rapids & I. R. Co. (C. C.) 154 Fed. 131, 136. And it is the function and duty of the officers of the judicial department of a government, which they may not lawfully renounce, to exercise their own independent judgments, guided only by the established legal principles and the recognized canons of interpretation, in the construction of its statutes and to adjudge their just and true interpretation, even though the officers of an executive department have construed them otherwise. Deming v. McClaughry, 113 Fed. 639, 640, 641, 51 C. C. A. 349, 350, 351; Hartman v. Warren, 76 Fed. 157, 162, 22 C. C. A. 30, 36; Webster v. Luther, 163 U. S. 331, 342, 16 Sup. Ct. 963, 41 L. Ed. 179; United States v. Tanner, 147 U. S. 661, 663, 13 Sup. Ct. 436, 37 L. Ed. 321; Merritt v. Cameron, 137 U. S. 542, 11 Sup. Ct. 174, 34 L. Ed. 772; United States v. Graham, 110 U. S. 219, 3 Sup. Ct. 582, 28 L. Ed. 126; Swift, C. & B. Mfg. Co. v. United States, 105 U. S. 691, 26 L. Ed. 1108.

[5] The arguments in support of the contention that the act of 1884 so amended the act of 1875 as to extend the restriction upon the aliena-

tion of homesteads earned under the latter act have now been reviewed, and they seem to present no insuperable legal obstacle to the opposite conclusion. Let us now take the two acts of Congress, apply to them the indubitable rules for the interpretation of statutes upon the same or similar subjects, and ascertain their true legal effect.

The act of 1875 was a special law on the subject of Indian homesteads, limited to a small and specific class of Indians, those who had abandoned or should abandon their tribal relations, and it granted the right to homesteads to members of this class only under the restriction of 5 years upon their alienation. The act of 1884 was a general law on this subject of Indian homesteads, and it granted to Indians, whether they had abandoned their tribal relations or not, rights to homesteads subject to restrictions for 25 years on their alienation. The first and most impressive characteristic of the later act, when it is examined to ascertain its effect upon the earlier one, is that it contains no terms or words whatever that indicate any intent on the part of the legislators to amend, modify, repeal, or affect in any way the act of 1875, the restriction upon alienation there imposed, or any of its other provisions. The act of 1884 contains no reference to the act of 1875, or to any of its provisions, and it does not even contain a clause repealing acts or parts of acts inconsistent with its own provisions.

[2] Privileges granted to a certain class by special act are not affected by inconsistent general legislation, unless a contrary intent of the legislative body is clearly expressed or indubitably inferable therefrom. But the special act and the general law stand together, the one as the law of the particular class and the other as the general rule. Frost v. Wenie, 157 U. S. 46, 15 Sup. Ct. 532, 39 L. Ed. 614; South Carolina ex rel. Wagner v. Stoll, 17 Wall. 425, 436, 21 L. Ed. 650; Rosencrans v. United States, 165 U. S. 257, 262, 17 Sup. Ct. 302, 41 L. Ed. 708; Townsend v. Little, 109 U. S. 504, 512, 3 Sup. Ct. 357, 27 L. Ed. 1012; Petri v. Creelman Lumber Co., 199 U. S. 487, 499, 26 Sup. Ct. 133, 50 L. Ed. 281; Ex parte United States, 226 U. S. 420, 424, 33 Sup. Ct. 170, 57 L. Ed. ——; Gowen v. Harley, 56 Fed. 973, 976, 978, 979, 6 C. C. A. 190, 193, 195, 196; Christie-Street Commission Co. v. United States, 136 Fed. 326, 332, 333, 69 C. C. A. 464, 470, 471; Board of Com'rs v. Ætna Life Ins. Co., 90 Fed. 222, 227, 32 C. C. A. 585, 590; Bear v. Chicago, Great Western Ry. Co., 141 Fed. 25, 27, 72 C. C. A. 513.

In Frost v. Wenie, 157 U. S. 46, 57, 58, 15 Sup. Ct. 532, 536 (39 L. Ed. 614), the act of May 28, 1880, provided that all of the Osage Indian lands unsold and unappropriated, with immaterial exceptions, should be subject to disposal to actual settlers "having the qualifications of pre-emptors on the public lands" only. These Osage lands were within that portion of the Ft. Dodge Military Reservation lying north of the Atchison, Topeka & Santa Fé Railroad. The act of December 15, 1880, provided that all these lands should be offered to actual settlers under the homestead laws only, and the question was whether by the later act the rights of parties specified in the former act were so modified and restricted that they could take lands under

the homestead laws only. The Supreme Court held that they were not affected by the later act and said:

"It is to be observed that although the words of the act of December 15, 1880, are broad enough, if literally interpreted, to embrace *all* the lands within the abandoned Ft. Dodge military reservation north of the Atchison Railroad, there are no words in it of express repeal of any former statute. It is well settled that repeals by implication are not to be favored. And where two statutes cover, in whole or in part, the same matter, and are not absolutely irreconcilable, the duty of the court—no purpose to repeal being clearly expressed or indicated—is, if possible, to give effect to both. In other words, it must not be supposed that the Legislature intended by a later statute to repeal a prior one on the same subject, unless the last statute is so broad in its terms and so clear and explicit in its words as to show that it was intended to cover the whole subject, and therefore to displace the prior statute. McCool v. Smith, 1 Black, 459, 468 [17 L. Ed. 218]; United States v. Tynen, 11 Wall. 88, 93 [20 L. Ed. 153]; Red Rock v. Henry, 106 U. S. 596, 601 [1 Sup. Ct. 434, 27 L. Ed. 251]; Henderson's Tobacco, 11 Wall. 652 [20 L. Ed. 235]; King v. Cornell, 106 U. S. 395, 396 [1 Sup. Ct. 312, 27 L. Ed. 601]."

This opinion seems directly to rule the case in hand. Again, even when two acts upon the same subject are repugnant in some of their provisions, the later act modifies or repeals the earlier act so far, and only so far, as its provisions are repugnant to the provisions of the earlier one. In re Henderson's Tobacco, 11 Wall. 652, 657, 20 L. Ed. 235; Board of Com'rs v. Ætna Life Ins. Co., 90 Fed. 222, 32 C. C. A. 585. No repugnancy is perceived between the imposition of a restriction for 5 years on the homesteads of nontribal Indians by the act of 1875 and the imposition of a restriction on the alienation of homesteads of all Indians who avail themselves of the privilege of the act of 1884 for 25 years, or between any of the other provisions of these two acts.

Taylor had occupied and cultivated his homestead for five years and had thereby accepted the offer of the government and closed its contract with him to grant him the land with a restriction upon its alienation for only five years if he made his final proof within two years before the act of 1884 was passed. A construction which would apply the restriction of that act to the previous offer to and contract with Taylor and change them into an offer and contract for the land subject to a restriction on alienation for 25 years necessarily gives the act of 1884 a retrospective and mandatory effect, while its terms are prospective and permissive only. It provides that any Indians may in the future avail themselves of the homestead laws subject to restrictions on the alienation of their lands for 25 years, not that nontribal Indians who availed themselves of the homestead laws under the act of 1875, or any other Indians, must avail themselves of the act of 1884, or subject themselves to its restrictions. A construction which gives a statute a retrospective effect should never be adopted unless it appears clearly and unequivocally that the legislative body enacted it with the intention to produce that effect. United States Fidelity & Guar. Co. v. United States, 209 U. S. 306, 314, 316, 28 Sup. Ct. 537, 52 L. Ed. 804; Endlich, Interpretation of Stat., § 271; Twenty Per Cent. Cases, 20 Wall. 179, 187, 22 L. Ed. 339; National Bank of Comm. v. Riethmann, 79 Fed. 582, 25 C. C. A. 101;

Jaedicke v. United States, 85 Fed. 372, 375, 29 C. C. A. 199; McClellan v. Pyeatt, 66 Fed. 843, 846, 14 C. C. A. 140, 143.

[8] Finally:

"All statutes in pari materia are to be read and construed together as if they formed part of the same statute and were enacted at the same time." Potter, Dwar. St. 145; Board of Com'rs v. Ætna Life Ins. Co., 90 Fed. 222, 227, 32 C. C. A. 585, 590.

If the act of 1875 and the act of 1884 be read as one act passed at the same time, they provide that there is granted to nontribal Indians the right to acquire homesteads upon payment of the officers' fees subject to a restriction on alienation for 5 years, and that there is granted to all Indians the right to acquire homesteads subject to a restriction on alienation for 25 years without the payment of any officers' fees. Every provision of each act has its complete effect, every promise of the government is fulfilled, every right of each homesteader is preserved and protected, and every rule of construction is obeyed. If the act of 1884 be read as an amendment of the act of 1875 and given the effect of an amendment or modification thereof, and of an imposition upon the lands of homesteaders under that act of a restriction upon their alienation for 20 years more than the 5 years fixed by the act of 1875, the offer and promise of the United States contained in that act is broken, the rights of the homesteaders under it are violated, the provision of the act of 1875 which granted to nontribal Indians the right to homesteads with a restriction on alienation of only 5 years, is annulled and the indisputable canons of interpretation which have been cited are disregarded. Our conclusion is that the Act of July 4, 1884, 23 Stat. 96, does not repeal or modify any of the provisions of the Act of March 3, 1875, 18 Stat. 402, 420; that all the provisions of the two acts stand together and remain in force; that the act of 1875 grants to nontribal Indians the right to acquire homesteads with a restriction of only 5 years on their alienation; that the act of 1884 grants to all Indians the right to homesteads with a restriction of 25 years on alienation; and that the latter act did not have the effect to extend the restriction on the alienation of the land of Taylor, a homesteader, under the act of 1875 from 5 years to 25 years, or to affect that restriction in any way. The decree below must accordingly be reversed, and the case must be remanded to the court below, with directions to dismiss the bill.

It is so ordered.