UNITED STATES v. CAIN–BONNESS LUMBER & TIMBER CO. et al.

No. 2161.

(District Court, W. D. Washington, N. D.   June 18, 1914.)

1. INDIANS (§ 17*)—INDIAN LANDS—SALE OF TIMBER—RESTRICTIONS.

Where land was patented to a Nooksack Indian under a homestead application, with a restriction that the land, in accordance with Act Cong. July 4, 1884, c. 180, 23 Stat. 96 (U. S. Comp. St. 1901, p. 1420), would be held in trust by the United States for 25 years for the sole use and benefit of the patentee, and at the expiration of that period the United States would convey the land to the patentee discharged of the trust, a sale of the timber on the land, which was merely incidental to the beneficial use thereof for agriculture, was not a violation of the restriction.

[Ed. Note.—For other cases, see Indians, Cent. Dig. § 48; Dec. Dig. § 17.*]

2. PUBLIC LANDS (§§ 106, 117*)—PATENTS—COLLATERAL ATTACK.

Where the Land Department had jurisdiction and power to dispose of public land, neither a patent for the land issued by the department, nor

the decisions of the department on questions within its jurisdiction relating to the land, could be collaterally attacked.

[Ed. Note.—For other cases, see Public Lands, Cent. Dig. §§ 104, 301, 302, 324; Dec. Dig. §§ 106, 117.*]

3. PUBLIC LANDS (§ 117*)—INDIAN LANDS—SALE—RESTRICTIONS.

In a suit by the United States to set aside a sale of timber on Indian lands and the grant of an easement for a right of way for 50 years, a defense, involving a determination that the decision of the land department that the Indian had not brought himself within the provisions of Act Cong. March 3, 1875, c. 131, § 15, 18 Stat. 420 (U. S. Comp. St. 1901, p. 1419), restricting alienation for five years only, was erroneous, and requiring a reformation of the patent by striking therefrom a provision that the land should be held in trust for 25 years, according to Act Cong. July 4, 1884, c. 180, 23 Stat. 96 (U. S. Comp. St. 1901, p. 1420), and the insertion of a provision against alienation for five years under the act of 1875, all by way of collateral attack on the patent sought to be reformed, was unsustainable.

[Ed. Note.—For other cases, see Public Lands, Cent. Dig. § 324; Dec. Dig. § 117.*]

4. INDIANS (§ 31*)—INDIAN LANDS—TRANSFER—ALIENATION—RESTRICTIONS.

Act Cong. Feb. 8, 1887, c. 119, § 6, 24 Stat. 390, conferring the right of citizenship on Indians who had severed their tribal relations and adopted the habits of civilized life, did not entitle them to enter public lands under the homestead laws free from restrictions, nor preclude the government, in issuing a homestead patent to an Indian, from including a clause that the land should be held in trust for 25 years, as provided by Act Cong. July 4, 1884, c. 180, 23 Stat. 96 (U. S. Comp. St. 1901, p. 1420).

[Ed. Note.—For other cases, see Indians, Cent. Dig. § 23; Dec. Dig. § 31.*]

5. INDIANS (§ 15*)—INDIAN LANDS—HOMESTEAD—RESTRICTION ON ALIENATION—VIOLATION—RIGHT OF WAY EASEMENT.

A Nooksack Indian having received a trust patent pursuant to a homestead application, containing a restriction on alienation for 25 years, and having sold the timber on the land, a conveyance of a right of way over the land to the grantee of the timber for 50 years, with all privileges, etc., for the construction of a logging railroad, constituted a violation of the restriction, and was invalid.

[Ed. Note.—For other cases, see Indians, Cent. Dig. §§ 17, 29, 34, 37–44; Dec. Dig. § 15.*]

In Equity. Suit by the United States against the Cain-Bonness Lumber & Timber Company and others. Decree for complainant.

Billy Tom (Sewalmus), an Indian of the Nooksack Tribe, on October 31, 1889, filed a homestead application under section 2289, U. S. Rev. St. (U. S. Comp. St. 1901, p. 1388), for the land in issue, upon which he then was and for a long time prior thereto had been residing. Final proof was submitted on the 13th day of July, 1891, further proof made February, 1895, and patent issued July 18, 1895. One of the recitals in the patent is as follows:

"Know now ye, that the United States of America, in consideration of the premises, and in accordance with the provisions of the said act of Congress of July 4, 1884, hereby declares that it does and will hold the land * * * for the period of twenty-five years in trust for the sole use and benefit of said Billy Sewalmus * * * and at the expiration of said period * * * will convey the same by patent to the said Billy Sewalmus discharged of said trust."

On February 4, 1907, the Indian and his wife entered into a written contract with the Cain-Bonness Lumber & Timber Company, in which:

"The said parties of the first part (Indians) for and in consideration of the sum of $700.00 to them in hand paid by the party of the second part hereby agree to convey, bargain and sell all the timber of all kinds; also fifty foot right of way for a term of fifty years, with all the privileges, etc., for the construction of a logging railroad."

After the signatures of the Indians appears the following:

"Subscribed and sworn to before me this 4th day of February, 1907. Emery Bell, Notary Public."

It is stipulated that $400 was paid for the timber and $300 for the right of way, and that 400,000 feet of timber of the value of $1 per thousand was removed from the land, and 3,145 railroad ties were cut at the cost of $448.85, which were of the value of $629. It is also stipulated that 8,000 feet was taken from the bottom land, and the remainder from the first and second bench land. The price at which the timber was sold was its reasonable market value. It is further shown that much of the timber originally on the land was sold to other parties long prior to the sale in issue here. Much testimony was presented by defendants from reputable white men who have lived in the community for many years, and who owned land of like character adjoining and in the near vicinity, and who have cleared their lands and farmed it, and cultivate their lands annually. This testimony beyond doubt establishes the fact that the chief value of the land is for agriculture.

Clay Allen, U. S. Dist. Atty., and Winter S. Martin, Asst. U. S. Atty., both of Seattle, Wash.

Coleman & Gable, of Mt. Vernon, Wash., and Jesse A. Frye, of Seattle, Wash., for defendants.

NETERER, District Judge (after stating the facts as above). [1] The facts demonstrate that the removal of the timber was an incident to the beneficial use and enjoyment of the land, and that the sale of the timber is not within the restraints on alienation. Justice McKenna, in United States v. Paine Lumber Co., 206 U. S. 467, 473, 27 Sup. Ct. 697, 699 (51 L. Ed. 1139), said:

"The land is not the land of the United States, and the timber when cut did not become the property of the United States. And we cannot extend the restraint upon the alienation of the land to a restraint upon the sale of the timber consistently with a proper and beneficial use of the land by the Indians. * * * Indeed, it may be said that arable land is of no use until the timber is off, and it was of arable land that the treaty contemplated the allotments would be made. We encounter difficulties and baffling inquiries when we concede a cutting for clearing the land for cultivation, and deny it for other purpose. At what time shall we date the preparation for cultivation and make the right to sell the timber depend? Must the axe * * * precede the plow and do no more than keep out of its way? And if that close relation be not always maintained, may the purpose of an allottee be questioned and referred to some advantage other than the cultivation of the land, and his title or that of his vendee to the timber be denied? Nor does the argument which makes the occupation of the land a test of the title to the timber seem to us more adequate to justify the qualification of the Indians' rights."

This conclusion would be decisive of this case but for the alleged transfer of an easement for the 50-foot right of way across the land. The grant of such an interest in the land necessitates a determination of the question as to whether there was a restriction upon alienation at the time it was made. Defendants contend that the patent should have been issued under the act of March 3, 1875, 18 Stat. 420, c. 131, § 15 (U. S. Comp. St. 1901, p. 1419), which provided that the land should be inalienable during a period of only five years, which period had expired at the time of the grant. This contention is based upon the holding of the Circuit Court of Appeals in Hemmer v. United States, 204 Fed. 898, 123 C. C. A. 194, that the act of 1875, which related to the acquisition of homesteads by nontribal Indians, was not repealed by the act of July 4, 1884, 23 Stat. 96, c. 180 (U. S. Comp. St. 1901, p. 1420), which embraces both tribal and nontribal Indians.

In that case the Indian had entered upon the land under the provisions of the act of 1875, and had resided upon and cultivated it for five years, and was entitled to make final proof and receive patent before the passage of the act of July 4, 1884. His actual proof was made, however, a few months after the passage of the latter act. The land department erroneously inserted in his patent a declaration that it should be inalienable for 20 years in accordance with the provisions of the act of January 18, 1881, 21 Stat. 315, c. 23. This act related solely to the Winnebago Indians of Wisconsin, and had no application to the Indian to whom the patent was issued, and was inserted therein by reason of an erroneous construction by the land department that the restrictions required by that act to be inserted in patents issued to Winnebago Indians applied to other Indians as well. In 1907 the department ruled that the decision of United States v. Saunders (C. C.) 96 Fed. 268, that the act applied only to the Winnebago Indians was correct, and that its prior construction had been wrong. Thereafter, in August, 1908, and, as the court concludes, "doubtless in reliance upon these decisions," defendant bought the land from the Indian. Subsequently, in June, 1909, the land department issued the Indian another patent, which declared that it was issued in lieu of the first patent, and contained a provision that the land should be held in trust for a period of 25 years, according to the terms of the act of 1884. In July, 1909, the United States brought a suit in equity against the immediate and remote grantees of the Indian to set aside all conveyances as having been made contrary to the provision that the land should be held in trust for 25 years, contained in the last issued patent. The court held that the provision in the first patent that the act of 1881 should govern was void, and that the only provision against alienation attached to the Indian's title was that provided by the act of 1875, under which the Indian's right to obtain patent had become vested.

[2] It is well settled that a patent issued by the land department, where there is no want of jurisdiction or power to dispose of the land, is not subject to collateral assault. 32 Cyc. 1040, and cases cited; United States v. Winona & St. Paul Ry. Co., 67 Fed. 948, 15 C. C. A. 96. It is equally well settled that the decisions of the land depart-

ment upon questions within its jurisdiction cannot be collaterally as-
sailed.

"The land department of the United States is a special tribunal vested with
judicial powers, whose decisions upon questions within its jurisdiction are im-
pregnable to collateral attack, and conclusive until they are reversed on ap-
peal or set aside by proper proceedings in equity." Sanborn, J., in Hartman
v. Warren, 76· Fed. 159, 22 C. C. A. 30; Johnson v. Drew, 171 U. S. 92, 18
Sup. Ct. 800, 43 L. Ed. 88; McCormick v. Hays, 159 U. S. 337, 16 Sup. Ct.
37, 40 L. Ed. 171; Smelting Co. v. Kemp, 104 U. S. 636, 26 L. Ed. 875.

[3] The Indian Sewalmus could have obtained the land in question
under the provisions of the act of 1884. Whether he was also entitled
to obtain it under the provisions of the act of 1875 was a question
which was presented to the land department at the time his applica-
tion for patent was presented. The determination of that question
would depend, among other things, upon whether he was a member of
the special class named therein, that is, whether he had severed his
tribal relations. This would be a question of fact, depending upon
evidence to be presented before the tribunal having jurisdiction of the
matter, and which, if presented, we must presume was acted upon by
the issuance of the patent under the act of 1884. We are not con-
cerned with the question as to whether the issuance of the patent un-
der the act of 1884 was erroneous. The land department had the
power to issue the patent under either the act of 1875 or 1884. The
fact that it may have erred does not deprive it of jurisdiction, or make
its determination any the less final against collateral attack. The de-
fense set up involves: (1) a determination by this court that the de-
cision of the land department that the Indian had not brought himself
within the provisions of the act of 1875 was erroneous; (2) the ref-
ormation of the patent by striking therefrom the provision that the
land shall be held in trust for 25 years, according to the provisions of
the act of 1884; (3) the insertion of a provision against alienation for
a period of 5 years, according to the act of 1875. All of this is asked
for by way of collateral attack on the instrument thus sought to be
reformed. A mere statement of such a request demands its denial.

It will be observed from the facts stated in the Hemmer Case that
the provision that the land should be held in trust for 25 years, in-
serted in the patent at the time of its issuance, was beyond the juris-
diction of the land department; that is, that it had no power to insert
therein the provisions of an act which had no application whatever.
At the time the defendant purchased the land and when his rights at-
tached thereto, there was no valid restriction against alienation con-
tained therein, and the court determined that it was only such restric-
tions as that provided for under the act of 1875, under which the In-
dian had entered and made his proof. The court held, in substance,
that, the defendant having relied upon the provisions of the act of
1875, which were by implication terms of the patent, the government
should not be permitted, after the defendant had purchased the land,
to insert other and more onerous provisions 23 years after the issuance
of the patent. However, no element of estoppel enters into the instant
case, for the restriction which the defendants are seeking to set aside

appeared upon the face of the patent at the time they acquired the easement.    Simmons Creek Coal Co. v. Doran, 142 U. S. 417, 437, 12 Sup. Ct. 239, 35 L. Ed. 1063.

[4] The defendants also contend that as section 6 of the act of February 8, 1887, 24 Stat. 390, c. 119, conferred the right of citizenship on Indians who had severed their tribal relations and adopted the habits of civilized life, they were entitled to land entered under the homestead laws as free from restrictions as any other citizen of the United States.    A similar contention was made in Frazee v. Spokane County, 29 Wash. 278, 69 Pac. 779, and the court, speaking through Justice Hadley, said:

"The fact that the act of 1887 confers citizenship upon Indians who comply with certain conditions does not conflict with the law of 1884. * * * The later act does not repeal the former, unless it may be said that the provision conferring citizenship in the later one has the effect to repeal the clause in the former which places restrictions upon alienation. We do not think it had that effect. The evident design of Congress was to prepare the Indian to become a self-supporting individual, and if, as a means to that end, and for the purpose of inducing him to separate himself from his tribal relations, it saw proper to confer citizenship upon him, we are unable to see that it is repugnant to the government's still retaining a certain guardianship over him, in the way of holding title to his lands in trust for a period, so that he may not be deprived of them while he is learning the lessons and duties of citizenship." Beck v. Flournoy Live Stock Co., 65 Fed. 30, 12 C. C. A. 497; United States v. Flournoy Live Stock Co. (C. C.) 69 Fed. 886; United States v. Flournoy Live Stock Co. (C. C.) 71 Fed. 576; Frazee v. Piper, 51 Wash. 278, 98 Pac. 760.

[5] The statement of Judge Hanford in the case of United States v. Saunders (C. C.) 96 Fed. 268, that the restriction against alienation for 20 years was repugnant to the grant, and void, must be taken in connection with the rest of his opinion.    When so considered, it is manifest that he did not mean that the restriction was void because it was repugnant to the grant, but because "it was not required nor authorized by any law." The only question there involved was whether a restriction imposed by an act which had no application was to be enforced.    It could not therefore have been determined that the provisions of an act which did have application would have been void, if inserted in the patent.    Such a determination would have been without the range of inquiry.    The court decided in that case that the act of 1881 had no application because it related to a special tribe of Indians, and the act of 1884 had no application because final proof was made before the passage of that act.    It does not appear what would have been the decision had the court concluded that the provisions of either act were applicable.

Let an appropriate decree be presented.